Joseph BELLAVIA, Petitioner-Appellant,

v.

Walter FOGG, Warden, Green Haven Correctional Facility, Stormville, New York, Respondent-Appellee.

No. 567, Docket 78–2126.

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1979.

Decided Dec. 17, 1979.

Domenick J. Porco, New York City (Diller, Schmukler & Asness, New York City, on the brief), for petitioner-appellant.

Allan S. Moller, Asst. Atty. Gen., State of New York, New York City (Robert Abrams, Atty. Gen., and George D. Zuckerman, Asst. Solicitor Gen., New York City, on the brief), for respondent-appellee.

Before WATERMAN, MANSFIELD and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

On this appeal from a judgment entered in the Eastern District of New York, Charles P. Sifton, *District Judge*, which denied a state prisoner's petition for a writ of habeas corpus, appellant challenges the constitutionality of his state court conviction for possession and sale of cocaine on three grounds: (1) that New York's statutory presumption that the occupants of a motor vehicle which contains narcotic drugs are all knowing possessors of the drugs, N.Y. Penal Law § 220.25(1) (McKinney Supp. 1978–79), denied him due process and the equal protection of the law; (2) that his mandatory net sentence of fifteen years to life imprisonment imposed under N.Y. Penal Law §§ 70.00(2)(a) and 3(a) (McKinney 1975), constituted cruel and unusual punishment;

and (3) that he was denied the effective assistance of counsel at his trial.

For the reasons below, we agree with the district court's rejection of each of appellant's claims. We affirm.

## I.

Appellant Joseph Bellavia and his co-defendants, Michael Kelly and Joseph Veltri, were arrested by undercover New York City police officers in Brooklyn on September 7, 1972. Immediately prior to the arrests, the three were about to conclude the sale of 31 ounces of cocaine to undercover officer Nicholas Molfetta. Undercover officers had been negotiating with Kelly and Veltri for this purchase of cocaine since August 21. Originally scheduled for midnight of September 6, the transaction was postponed to the afternoon of September 7, and then was delayed another five hours by Kelly's late arrival at the Brooklyn bar which had been chosen for the rendezvous. Increasingly anxious telephone conversations, on the one hand, between Veltri and the undercover officers waiting in the bar, and, on the other hand, between Kelly and Veltri, established that Kelly had the cocaine but was waiting for delivery of some heroin which the undercover officers also wished to buy.[1] Veltri explained to Molfetta that the reason for the delay was "that it's not his [Kelly's] stuff."

Kelly finally arrived at the bar shortly before 9 p. m. on September 7. In response to a question from Molfetta, Kelly said that the drugs were with his brother-in-law "in the car." He stepped outside to get a sample of the cocaine. He gave it to Molfetta who pretended to "snort" it in the lavatory of the bar. Molfetta pronounced it satisfactory. Kelly, Veltri and Molfetta then left the bar, walked a short distance, and came to a parked car in which Bellavia was seated behind the wheel.

Kelly asked Bellavia for a package. Bellavia slid across to the passenger's side, got out, and searched briefly in the back seat of the car. He promptly removed a rolled-up brown paper bag, about ten inches high, and handed it to Kelly. Kelly gave it to Molfetta and said, "Here's your stuff." Molfetta again pretended to test the contents. He then called in his back-up units. Kelly, Veltri and Bellavia were arrested. Later tests confirmed that the rolled-up bag contained 31 ounces of cocaine.

Bellavia, Kelly and Veltri were indicted in the Supreme Court, Kings County, on three counts: (1) criminal sale of dangerous drugs in the first degree, (2) criminal possession of dangerous drugs in the fourth degree, and (3) criminal possession of dangerous drugs in the first degree. The three defendants were convicted on each of the three counts after a jury trial before Honorable John J. Ryan.

At the trial, Bellavia did not take the stand in his own defense. Throughout the trial, his attorney, Solon Hanft, Esq., adopted what Justice Ryan referred to as "a very low profile". He allowed counsel for the other defendants, as Judge Sifton put it, "to carry the laboring oar." By such trial strategy, he hoped to emphasize the minimal role his client had played in the drug deal.

In accordance with New York law, Justice Ryan charged the jury that the evidence of Bellavia's presence in the car containing cocaine permitted them to infer that he had possession of the cocaine, but that they were not required to do so. The judge further charged the jury that, in the light of the evidence introduced by the defendants, or because of silence on the part of the defendants, they could refuse to draw the inference of possession which the presumption permitted. The State relied solely on the presumption for its case against Bellavia.

After the return of the guilty verdicts. Bellavia was sentenced on April 4, 1973 to concurrent terms of 15 years to life on the

---

1. As is customary in illicit drug transactions, there were no direct references to narcotics over the phone. Officer Molfetta testified that Kelly used a code, under which "boys" stood for heroin and "girls" stood for cocaine. Thus, Kelly told the officer that he had the two girls but was still waiting for the boys to arrive.

first count, a maximum of 7 years on the second count, and 15 years to life on the third count.

Bellavia appealed his conviction to the Appellate Division, Second Department. He claimed as error that there was insufficient evidence to support his conviction, that the prosecutor's summation denied him a fair trial, that Justice Ryan's limitation of direct examination of one witness was an abuse of discretion, and that he had been denied equal protection of the law because the New York statute classifying the seriousness of drug offenses by the amount of drug involved did not allow for the purity of the contraband substance. His conviction was unanimously affirmed without opinion. *People v. Bellavia*, 45 A.D.2d 934, 358 N.Y.S.2d 959 (2d Dept. 1974). Leave to appeal to the Court of Appeals was denied September 4, 1974.

On May 8, 1975, Bellavia filed with Justice Ryan a coram nobis petition under N.Y. Crim. Proc. Law §§ 440.10 and 440.20 (McKinney 1971), seeking to have his conviction and sentence vacated on the ground that his constitutional rights had been infringed. Seven claims were asserted in the petition, including claims of ineffective as-

sistance of counsel, the unconstitutionality of the drug presumption statute, and cruel and unusual punishment.[2] The coram nobis petition was denied July 1, 1975. Leave to appeal to the Appellate Division was denied May 13, 1976.

On January 5, 1977, Bellavia commenced the instant habeas corpus proceeding in the Eastern District of New York. After some preliminary matters were handled by Judge Sifton, he filed a well reasoned opinion on June 5, 1978 ruling upon each of the three claims set forth at the beginning of this opinion. From the judgment entered on Judge Sifton's opinion denying the petition for a writ of habeas corpus, this appeal has been taken.

### III.

█ In the light of these facts and prior proceedings,[3] we turn first to appellant's claim[4] that he was denied due process and the equal protection of the law by the New York statutory presumption that the occupants of a motor vehicle which contains narcotic drugs are all knowing possessors of the drugs. N.Y. Penal Law § 220.25(1) (McKinney Supp. 1978–79).[5]

---

**2.** The other claims asserted in his coram nobis petition were that he had been denied his constitutional rights by the exclusion of the public from portions of his trial; that he had been denied a fair trial by the claimed destruction of purportedly crucial evidence, namely, tapes made by the State which might have contained exculpatory remarks by Kelly; that classifying cocaine as a narcotic was arbitrary and capricious; and that classifying drug offenses by the amount of contraband, rather than by its pure drug content, was arbitrary and capricious.

**3.** We hold that technically Bellavia has exhausted his state remedies since his coram nobis petition did present claims that at least were labeled the same as those set forth in his instant habeas petition. *Lunz v. Henderson*, 533 F.2d 1322, 1324 & n. 3 (2 Cir. 1976) (three coram nobis petitions held to have exhausted state remedies).

We note, however, that the exhaustion issue here is a close one. As the government points out, appellant's counsel—presumably in an effort to execute an end run with respect to recently decided, and controlling, cases of this Court such as *Lopez ex rel. Garcia v. Curry*, 583 F.2d 1188 (2 Cir. 1978), and *Carmona v. Ward*, 576 F.2d 405 (2 Cir. 1978), *cert. denied*,

439 U.S. 1091 (1979)—has added a gloss to his constitutional claims so that they have emerged quite different from those presented to the state court.

In balance, however, and under the special circumstances of this case, we have concluded that the interests of justice will be best served by proceeding directly to the merits of the claims raised.

**4.** This is the only claim on appeal before us as to which Judge Sifton issued a certificate of probable cause. He expressly denied such certification as to appellant's other claims on appeal.

**5.** N.Y. Penal Law § 220.25(1) provides:

"The presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found; except that such presumption does not apply (a) to a duly licensed operator of an automobile who is at the time operating it for hire in the lawful and proper pursuit of his trade, or (b) to any person in the automobile if one of them,

We need hardly look further than Chief Judge Kaufman's opinion of last Term in *Lopez ex rel. Garcia v. Curry*, 583 F.2d 1188 (2 Cir. 1978), to sustain the constitutionality of § 220.25(1) as applied to Bellavia. Here, as in *Lopez*, "dealership quantities" of drugs were involved. Judge Kaufman's conclusion in *Lopez* is equally applicable here:

> "The Legislature therefore had justification to find that those discovered in an automobile with dealership quantities of controlled substances are more likely than not to have knowing possession of the drugs. Accordingly, we hold § 220.-25(1) to be constitutional as applied to such large quantities of narcotics." 583 F.2d at 1192 (footnote omitted).

Moreover, the New York Court of Appeals upheld the constitutionality of § 220.-25(1) as applied in the very case out of which the *Lopez* habeas case arose. *People v. Leyva*, 38 N.Y.2d 160, 341 N.E.2d 546, 370 N.Y.S.2d 30 (1975). We agree with the conclusion reached by Judge Sifton below in following the reasoning of the New York Court of Appeals in *People v. Leyva, supra*:

> "Petitioner's final argument is that the statutory presumption contained in N.Y. Penal Law [§ 220.25] is unconstitutional. For the reasons set forth in *Leyva v. Superintendent*, 428 F.Supp. 1 (E.D.N.Y. 1977) [*vacated and remanded*, 573 F.2d 1292 (2 Cir. 1978)] and *People v. Leyva*, 38 N.Y.2d 160, 379 N.Y.S.2d 30 (1975), this Court concludes that the presumption is not unconstitutional as applied to the facts of this case involving a significant quantity of cocaine and that any failure by the trial court to limit the statute to situations where large quantities of drugs were involved was harmless in view of the fact that a large quantity of cocaine was all that was at issue here." (citations omitted).

Finally, as recently as this past Term the Supreme Court in unmistakable language upheld as applied the constitutionality of a nearly identical New York statute, N.Y. Penal Law § 265.15(3) (McKinney Supp. 1976–77), which makes presence in an automobile of a firearm presumptive evidence of its possession by all persons occupying the automobile. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140 (1979), *rev'g* 568 F.2d 998 (2 Cir. 1977). The Court in *Allen* held that it was error to "pass on the constitutionality of this kind of statute 'on its face'", 442 U.S. at 163, without determining whether the presumption was mandatory; and in fact the presumption was not mandatory, as the New York Court of Appeals had held in *People v. Lemmons*, 40 N.Y.2d 505, 510–11, 354 N.E.2d 836, 840, 387 N.Y.S.2d 97, 100 (1976).

Likewise in the instant case, the presumption created by N.Y. Penal Law § 220.-25(1) has been held to be a permissive, not a mandatory, presumption by the New York Court of Appeals. *People v. Leyva, supra*, 38 N.Y.2d at 167, 341 N.E.2d at 550, 379 N.Y.S.2d at 36. And the trial judge in the instant case, Mr. Justice Ryan, instructed the jury accordingly.

We uphold as applied to Bellavia the constitutionality of N.Y. Penal Law § 220.25(1). We decline to rule upon the constitutionality of the statute on its face since the presumption is permissive, not mandatory.

We hold that appellant was not denied due process or equal protection of the law under the Fourteenth Amendment.

### IV.

■ We turn next to Bellavia's claim that the mandatory net sentence of fifteen years to life imposed on him pursuant to N.Y. Penal Law §§ 70.00(2)(a) and 3(a) (McKinney 1975) constitutes cruel and unusual punishment in violation of the Eighth Amendment.

As with the statutory presumption claim discussed above under section III of this opinion, we regard appellant's mandatory

---

having obtained the controlled substance and not being under duress, is authorized to possess it and such controlled substance is in the same container as when he received posses-

sion thereof, or (c) when the controlled substance is concealed upon the person of one of the occupants."

sentence claim as virtually foreclosed by a very recent opinion of our Court which construed the same mandatory sentence provision as is here involved and rejected substantially the same constitutional claim as is here asserted. *Carmona v. Ward*, 576 F.2d 405 (2 Cir. 1978), *cert. denied*, 438 U.S. 1091 (1979).

In *Carmona*, after a very thorough review of the Eighth Amendment case law, Judge Mulligan acknowledged that its prohibition reaches beyond "torture or other barbaric modes of punishment", *id.* at 408, but noted that the Supreme Court never had struck down a sentence solely because of its length. Turning to a consideration of the New York sentencing scheme under the "disproportionality" test,[6] he stated:

"The crucial issue therefore becomes whether the New York State Legislature's assessment of the dangerousness of the crimes of selling and of possessing cocaine with an intent to sell it, as reflected in the punishment imposed, is so unreasonable that it violates the constitu-

tion by allotting excessively severe penalty for the crime." *Id.* at 410.

After considering the severity of the punishment, as compared with punishments for other crimes in New York and as compared with punishments in other jurisdictions for the same crime, Judge Mulligan concluded:

"In view of the extraordinary crisis faced by the State of New York, caused by the crime of drug trafficking, we cannot agree with the district court that the punishments meted out to the appellees here are constitutionally defective." *Id.* at 417.

We have been invited to substitute our judgment not only for that of a state *court*, but for that of a state *legislature*, and to order the mandatory sentence here imposed, which is within statutory limits, to be vacated or reduced. Our respect is so great for the traditional role of the federal judiciary in not interfering with matters which properly are the province of a state legislature and our respect is so profound for the

---

6. *See* Mulligan, *"Cruel and Unusual Punishments: The Proportionality Rule"*, 47 Fordham L.Rev. 639 (1979) (Sonnett Lecture).

Judge Mulligan's lecture also focuses upon the dangers involved in a court's efforts to second-guess the legislature in the latter's sphere of competence, the assessment of the seriousness of a particular crime and the penalty that the legislature ought to provide:

"The first prong of the [proportionality] test requires the court to make a judgment as to the seriousness of the crime charged and this of course invites the substitution of the subjective views of the judge for those of the legislature. The concern here is both constitutional and practical. We must observe the doctrine of separation of powers as well as federalism. This emphasizes the need for judicial restraint. A practical consideration, of course, is the institutional limitation on judicial factfinding. The legislature, acting through commissions and committees with funds for counsel, staff and public hearings, is patently better equipped than the judiciary to make the factual and social determinations which underlie any decision as to the gravity of a crime. It is also more attuned to contemporary community standards and can best judge the public's concern about particular criminal activity.

The second prong of the test is even more vulnerable since it calls for a comparison by

the judicial branch of the statutory sentence imposed for the crime committed with those imposed for more serious offenses in the same jurisdiction. The problem of determining the gravity of a particular crime is difficult enough without having to make judgments about other crimes. It is rather simple to make a decision that smoking in the subway is not as serious as rape. But comparing the crimes of and punishments for arson and kidnapping, automobile larceny and drunken driving, requires the digestion of a vast amount of penological and sociological data not usually available to the jurist. The comparisons cannot be mechanically applied and the danger of the judiciary's substitution of its judgment on a social issue for that of the legislature charged with the responsibility of making the decision initially is apparent.

The third step of the proportionality test requires the court to compare the sentence under review with those imposed in other jurisdictions for the same crime. This is the least susceptible to misuse as a tool facilitating the substitution of individual judicial policy views for those of the legislature. At the same time, it is flawed and is basically antagonistic to the principles of federalism." *Id.* at 646–47 (footnotes omitted).

law of this Circuit as recently enunciated in *Carmona*, that we decline the invitation.[7]

We hold that appellant's sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

## V.

■ This brings us to Bellavia's remaining claim that he was denied the effective assistance of counsel. This claim can be disposed of summarily, for under any standard the claim is utterly without merit; and this is especially so under the stringent standard of this Circuit. *United States v. Wight*, 176 F.2d 376, 379 (2 Cir. 1949), *cert.*

**7.** We note that our concurring-dissenting colleague would not decline the invitation. Judge Mansfield's characteristically thoughtful, innovative opinion, we suggest, should be read in the light of the following observations.

First, the thrust of our colleague's displeasure appears in large measure to be directed at the statutory presumption provided for in N.Y. Penal Law § 220.25. The dissent's emphasis upon appellant's role as a mere occupant of the car (actually he was behind the wheel) strikes us as irrelevant since the panel is unanimous in rejecting appellant's challenge to the constitutionality of the statutory presumption, which of course is required by our decision in *Lopez ex rel. Garcia v. Curry, supra*, and the unmistakable language of the Supreme Court in *County Court of Ulster County, New York v. Allen, supra*, in reversing our decision in *Allen v. County Court*, 568 F.2d 998 (2 Cir. 1977), where we struck down as unconstitutional a virtually identical New York statute which created a presumption based on firearms, rather than narcotics, found in an automobile. Here, appellant was arrested, indicted and convicted, inter alia, for the *sale* of a large quantity of cocaine.

Second, appellant's conviction and mandatory 15 year to life sentence was unanimously affirmed by the Appellate Division and the New York Court of Appeals denied leave to appeal. The Governor of the State of New York denied appellant's clemency petition. We thus have a situation where the Chief Executive of the State, at least seven judges of the State, and three federal judges have declined the invitation to disturb the sentence which is within statutory limits.

Third, granted that our dissenting colleague's opinion appears to be addressed primarily to the Legislature of the State of New York, we should keep constantly in mind not only the controlling precedent, but the powerful reasoning of Judge Mulligan's opinion, in *Carmona v. Ward, supra* — a decision which the Supreme

*denied*, 338 U.S. 950 (1950). *Accord, e. g., United States v. Bubar*, 567 F.2d 192, 201–02 (2 Cir.), *cert. denied*, 434 U.S. 872 (1977); *Rickenbacker v. Warden*, 550 F.2d 62, 65–66 (2 Cir. 1976), and cases there cited, *cert. denied*, 434 U.S. 826 (1977); *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2 Cir.), *cert. denied*, 429 U.S. 849 (1976).

We think that the best summary of the record facts before us which belies appellant's claim of ineffective assistance of counsel is the statement by Judge Sifton in his opinion of June 5, 1978 denying Bellavia's petition for a writ of habeas corpus. We set it forth in full in the margin.[8]

Court refused to disturb. *Carmona* construed the same mandatory sentence provision as controls the instant case and rejected the same constitutional claim as appellant asserts here. Moreover, Judge Mulligan's discussion of *Carmona* and the proportionality rule in his Sonnett Lecture published in the Fordham Law Review, note 6, *supra*, provides a complete response to our dissenting colleague's plea to set aside appellant's sentence as cruel and unusual punishment.

Finally, having in mind that the United States Supreme Court "*has never found a sentence imposed in a criminal case violative of the Eighth Amendment merely because of its length*", *Carmona, supra*, 576 F.2d at 408 (emphasis added), with deference to our learned dissenting colleague we question both the legal basis and the practical feasibility of his suggested mandate in this case, referring to the following statement in the last paragraph of his dissenting opinion:

". . . I would remand the case with directions to release appellant . . . unless the state court within 60 days resentences him to a term consistent with the limitations of the Eighth Amendment."

The resentencing judge of course would have no more discretion under the statute in question than the original sentencing judge did. The sentence as imposed was mandatory and the constitutionality of that sentencing provision was upheld by our Court in *Carmona*. And even to suggest to the state court that a new sentence be imposed "consistent with the limitations of the Eighth Amendment" in the light of the United States Supreme Court's refusal ever to strike down a sentence because of its length, strikes us as more of a giant step than should be taken by us as one of the "inferior courts".

**8.** "This is, first of all, not a case like that in *United States v. Williams* [575 F.2d 388, 393 (2 Cir. 1978)], of a novice attorney handling

We hold that appellant was not denied the effective assistance of counsel under the Sixth Amendment.

Affirmed.

his first criminal trial. Petitioner's trial attorney had over thirty years of criminal trial experience and counsel on the sentence and on petitioner's direct appeal (on which the issue of incompetence was not raised) were former district attorneys known to this Court as able and effective criminal law practitioners. Of course even those long at the bar may nod on occasion or learn little from their experience. However, an examination of the record bears out the conclusion of the state court judge to whom this argument was first presented that any deficiencies in the performance of trial counsel cannot be laid to ignorance.

The examples of counsel's deficiencies parallel those presented in *United States v. Williams, supra*: waiver of an opening statement, ineffective cross-examination, tardy motions and an inadequate summation. In addition petitioner complains of his trial counsel's failure to put him on the witness stand and his failure to object to the alleged unconstitutionality of the statutory presumption contained in N.Y. Penal Law [§ 220.25].

However, counsel's decision not to put his client on the stand was reasonable in view of his client's admissions which were not introduced on the People's case and as they undoubtedly would have been on cross-examination of petitioner. Counsel's failure to object to the constitutionality of the statutory presumption cannot be faulted in view of the circumstances of this case in which over a pound of cocaine was found in the car, a circumstance which, as noted *infra*, precludes any conclusion that the presumption was unconstitutionally applied in this case.

The balance of petitioner's complaints concerning the effectiveness of his counsel all involve apparent differences of opinion concerning effective trial strategy in the defense of a client shown by the evidence to be considerably less involved in the transaction than his co-defendants. This court cannot determine that any of these decisions were so irrational as to deprive petitioner of a fair trial. On the contrary most appear understandable as part of a deliberate strategy to minimize defendant's culpability when compared with his co-defendants. Other decisions are understandable as appropriate defenses given the circumstances of petitioner's minimal involvement. Certainly there is no constitutional requirement that counsel cover matters covered by the cross-examination of co-counsel, particularly where allowing others to carry the laboring oar emphasizes the

MANSFIELD, Circuit Judge (concurring and dissenting):

I concur in Judge Timbers' carefully reasoned opinion insofar as it affirms the denial of appellant's application to set aside his state court conviction.[1] However, I dissent

client's minimal involvement in the transaction. The waiver of an opening statement was rational in a case in which a too-clearly articulated defense would assure that the prosecutor would concentrate his efforts on attacking it. The failure to join in the motion by co-counsel for a mistrial when the criminal records of the co-defendants were brought out or to move for a severance is certainly understandable as part of an effort to gain acquittal by contrasting petitioner's minimal involvement with the greater involvement of more culpable co-defendants. Under all the circumstances, considered separately or collectively, trial counsel's conduct of the trial hardly made a farce or mockery of the proceedings and, in all events, did not demonstrate a likelihood that effective assistance was not rendered."

1. Underscoring a position taken by me in *Indiviglio v. United States*, 612 F.2d 624 (2d Cir., Dkt. No. 79–2021, Nov. 26, 1979, Slip Op. 5446), I concur in the holding that Bellavia was not denied effective assistance of counsel not merely because his attorney's assistance meets the "shock the conscience—farce and mockery of justice" standard that remains the criterion in this Circuit, see *United States v. Wight*, 176 F.2d 376 and decisions cited at page 372, *supra*, but because it also satisfies the more liberal and lenient standards adopted by 9 out of the 10 other circuits. *United States v. DeCoster*, 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (D.C. Cir. 1973) ("reasonably competent assistance"); *United States v. Bosch*, 584 F.2d 1113, 1120–21 (1st Cir. 1978) ("reasonably competent assistance"); *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (en banc) ("customary skill and knowledge"); *Marzullo v. Maryland*, 561 F.2d 540, 543–44 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) ("normal competency"); *United States v. Gray*, 565 F.2d 881, 887 (5th Cir.), *cert. denied*, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978) ("reasonably effective counsel"); *United States v. Toney*, 527 F.2d 716, 720 (6th Cir. 1975), *cert. denied sub nom. Pruitt v. United States*, 429 U.S. 838, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976) ("reasonably effective assistance"); *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir.), *cert. denied sub nom. Sielaff v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975) ("minimum standard of professional representation"); *Morrow v. Parratt*, 574 F.2d 411, 412–13 (8th Cir. 1978) ("customary skills and diligence");

from its refusal to disturb the Draconian mandatory sentence imposed upon appellant pursuant to N.Y. Penal Law § 70.00—a minimum of 15 years and a maximum of life imprisonment, for at most acting as the driver of an automobile in which cocaine owned and sold by others outside of his presence was located. In my view this mandatory sentence, as applied to the peripheral figure involved in this case, is so disproportionate to the offense committed by him as to shock the conscience and contravene the Eighth Amendment's prohibition against the infliction of "cruel and unusual punishments."

In reaching this conclusion I accept the basic principles outlined recently by our esteemed colleague Judge Mulligan in his scholarly opinion in *Carmona v. Ward*, 576 F.2d 405 (2d Cir. 1978), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 58 (1979). It is the role of the legislature, as the voice of the people, to determine in the first instance what anti-social conduct is to be punished and to prescribe the penalty to be imposed upon violators. The legislature's statutory decision, reflecting as it does careful weighing of the societal interests involved, must not only be treated as presumptively valid but accorded the highest judicial respect. Ordinarily a mandatory penalty prescribed by the legislature should be enforced by the court regardless whether the court would have imposed a lesser punishment if it had been vested with the discretion to do so. A person challenging a legislative penalty therefore bears a heavy burden. In this case I believe that burden has been met.

As we recognized in *Carmona*, the Founding Fathers did not vest our legislators with untrammeled discretion to prescribe punishment. Were that the case there would have been no point in adopting the Eighth Amendment. Moreover, that Amendment is not limited to such sanctions as torture and barbarity but prohibits the infliction of punishment that is grossly disproportionate to the gravity of the offense committed. *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); *Rummel v. Estelle*, 568 F.2d 1193 (5th Cir. 1978); *Downey v. Perini*, 518 F.2d 1288 (6th Cir.), *vacated and remanded*, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975); *Griffin v. Warden*, 517 F.2d 756 (4th Cir.), *cert. denied*, 423 U.S. 990, 96 S.Ct. 402, 46 L.Ed.2d 308 (1975); *Hart v. Coiner*, 483 F.2d 136 (4th Cir. 1973), *cert. denied*, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974); *In re Lynch*, 8 Cal.3d 410, 105 Cal.Rptr. 217, 503 P.2d 921 (1973); *People v. Lorentzen*, 387 Mich. 167, 194 N.W.2d 827 (1972); *People v. Broadie*, 37 N.Y.2d 100, 371 N.Y.S.2d 471, 332 N.E.2d 338, *cert. denied*, 423 U.S. 950, 96 S.Ct. 372, 46 L.Ed.2d 287 (1975); *McDonald v. Commonwealth*, 173 Mass. 322, 328, 53 N.E. 874 (1899) *affd.*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901). In determining whether a penalty is grossly disproportionate to the offense committed the court must consider all relevant factors, including the seriousness of the offense charged, the severity of the sentence as compared with sentences prescribed for other criminal conduct within the jurisdiction and a comparison of the sentence with those authorized by other jurisdictions for the same crime. To these factors I would add the nature of the criminal conduct of the defendant whose sentence is challenged. A punishment that may be constitutional as applied to a major violator can be cruel and unusual as applied to a person who is a minor peripheral participant. In the latter case the punishment may well be grossly disproportionate to the gravity of the de-

---

*Cooper v. Fitzharris*, 586 F.2d 1325, 1327 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) ("reasonably competent and effective").

In view of the fact that nine circuits have adopted a different test along the lines of "reasonable competence," leaving only the Second and Tenth Circuits adhering to the old rule, I believe that in an appropriate case this court should re-evaluate the standard to be applied, as was suggested in *Rickenbacker v. Warden, Auburn Correctional Facility*, 550 F.2d 62, 66, 67 (2d Cir. 1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977). However, this is not an appropriate case for the reason that the conduct of Bellavia's counsel satisfied all of the above tests.

fendant's conduct, whereas in the former it would not. The impermissibility of a sentence is not a matter to be determined *in vacuo*. In providing that "Excessive bail shall not be required, nor excessive fines imposed nor cruel and unusual punishments *inflicted*" (emphasis added), the Amendment was directed not merely at the facial provisions of a legislative enactment, but at the application of a statutory mandate in practice. As Chief Judge Breitel, speaking for a unanimous court in *People v. Broadie*, 37 N.Y.2d 100, 113, 371 N.Y.S.2d 471, 477–478, 332 N.E.2d 338, 343–344 (1975) stated:

"A second consideration, in assessing the proportionality of the punishment to the crime, is the character of the offender and the gravity of the threat he poses to society. None of the present cases involved what are often called 'accidental' offenders. True, not all of these defendants are 'hardened' criminals. In each case, however, defendant was convicted of at least 'street' sales of heroin or cocaine, or possession of a large amount of narcotics, two of the situations to which the statutes were directed.

"The legislative presumption that he who possesses a large amount of narcotics is a seller would also seem reasonable. Defendant McNair, who was arrested in premises that were a veritable heroin 'factory' with over an ounce of the drug in her constructive possession, is hardly less culpable or dangerous than the appellants who made 'street' sales.

"These eight defendants were actually or presumptively, then, at least narcotics sellers, not only under broad statutory definition, but in the narrower, literal sense as well. As sellers, they cannot disclaim their roles in the scourge of drug distribution. The Legislature might reasonably deem the threat posed to society by each of these defendants a grave one indeed."

The disproportionality of a punishment is a relative matter, to be resolved in the context of the circumstances of a given case.

"We hold that a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment in violation of the Fourteenth Amendment. To be sure, imprisonment for ninety days is not, in the abstract, a punishment which is either cruel or unusual. But the question cannot be considered in the abstract. Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold." (*Robinson v. California*, 370 U.S. 660, 667, 82 S.Ct. 1417, 1421, 8 L.Ed.2d 758 (1962)).

Similarly, in *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937), the Court recognized that "for the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." See also *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

Applying these principles here, the crime of selling any substantial amount of cocaine is unquestionably an extremely grave one, posing great social harm, breeding widespread criminal conduct of other types, including crimes of violence, and therefore warranting severe penalties. In *Carmona* we decided that possession of one ounce of cocaine, an A–II felony under New York's 1973 drug laws, N.Y. Penal Law § 220.18, punishable by a mandatory penalty of six years to life imprisonment pursuant to N.Y. Penal Law § 70.00, was comparable to first-degree murder, first-degree kidnapping, first-degree rape and first-degree arson and that this classification could not be characterized as arbitrary or irrational. We also concluded, over the vigorous dissent of Judge Oakes, that despite the lesser penalties imposed in New York for crimes such as second-degree arson, first-degree manslaughter, first-degree burglary and second-degree kidnapping and despite the fact that no other state prescribes a mandatory life sentence for sale of one ounce of cocaine, and only six states permit a court to con-

sider imposition of a life sentence on a first felony offender, that the punishment imposed on the defendant in that case, a minimum of six years to a maximum of life imprisonment, did not constitute cruel and unusual punishment.

Accepting all of the foregoing as settled law in this Circuit, I am satisfied that, while the sentencing statute is not unconstitutional on its face, *Carmona, supra*, the penalty of 15 years minimum to a maximum of life imprisonment is unconstitutional when applied to the conduct of the appellant in this case. Viewed in the light most favorable to the State, the evidence showed that in 1972 appellant, then 30 years old, was not the owner, seller or purchaser of the cocaine forming the basis of the prosecution. The negotiation for the purchase and sale of the cocaine had been conducted elsewhere between Michael Kelly and Joseph Veltri. Appellant played no part in it. Moreover, the cocaine, according to Kelly, was owned by his brother-in-law, who was not the appellant. When the participants in the negotiation had arrived at the terms of sale, Kelly and Veltri walked down the street to the automobile in which appellant was seated behind the steering wheel, whereupon Kelly directed appellant to obtain a brown paper bag package from the rear seat. Appellant got out of the car, opened the rear door, rummaged around, found the brown paper package, which had its top rolled down, and turned it over to Kelly. This was his sole participation in the crime.

There was no evidence that appellant had ever dealt in narcotics or that he had performed any other role than that of an occupant of the automobile from which the narcotics owned and sold by others were produced. His conviction may be attributed to a New York statutory presumption to the effect that the presence of a dangerous drug in an automobile is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time the drug was found, N.Y. Penal Law § 220.25(1).[2] Prior to his conviction appellant had been lawfully and gainfully employed as the owner and driver of several trucks. He had no prior criminal record other than two minor convictions more than 10 years old, one for reckless driving and the other for petty larceny. There was no evidence that he had ever been involved in the drug business other than his participation in the transaction for which he was convicted in the present case.

Based on the foregoing evidence, including the presumption of possession, appellant was found guilty of selling a dangerous drug in the first degree, N.Y. Penal Law § 220.44 (now § 220.43), criminal possession of a dangerous drug in the first degree, N.Y. Penal Law § 220.23 (now § 220.21), and criminal possession of a drug in the fourth degree, N.Y. Penal Law § 220.15 (now § 220.12).

On April 4, 1973, Justice John J. Ryan, who presided at the trial, having no alternative, sentenced appellant pursuant to N.Y. Penal Law § 70.00 as a Class A–I felony offender to a mandatory prison term of a minimum of 15 years to a maximum of life imprisonment and as a lesser offender to an indeterminate term up to seven years imprisonment. At the time of sentence Judge Ryan stated:

"[A]s Counsel has indicated, the Court has very little room for discretion in this case. It cannot in any way change the maximum sentence which applies. It has the right to sentence to a minimum sentence of between fifteen and twenty-five years. Now, that is the extent of its discretion. (Sentencing minutes, P. 12)."

Under federal law appellant would have been subject to a maximum punishment of up to 15 years, 21 U.S.C. § 841, with the possibility of immediate probation, plus a

---

2. A conviction based on such a presumption, is, of course, perfectly valid since the Supreme Court's recent 5–4 decision in *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979), and our decision in *Lopez v. Curry*, 583 F.2d 1188 (2d Cir. 1978). But for purposes of determining whether the sentence here was disproportionate, this presumption simply confirms the strictly peripheral nature of appellant's participation, whether it be labelled possession or aiding and abetting a sale.

fine and a special parole term. Under New York State law, on the other hand, he will not be eligible for parole until 1987, when he will have served the 15-year minimum term. Of course, there remains the possibility that even after 1987 he might either be denied parole or, if released, placed on parole for the rest of his life.

On July 2, 1975, Judge Ryan wrote appellant's mother that if he (Ryan) had any discretionary power to alter the sentence imposed upon appellant, he would do so, and on September 16, 1975, he wrote to the New York State Executive Clemency Board urging that clemency be extended to the defendant.

Our decision in *Carmona*, which has been relied upon by the majority and by the district court as the basis for denying Eighth Amendment relief in the present case, is clearly distinguishable in several legally significant respects. In that case the two defendants were the very type of hardened narcotics traffickers against whom New York's new harsh laws were directed. Carmona had previously been convicted of narcotics related charges in both state and federal courts. She was actively engaged in the trade of selling narcotics. She admitted possessing cocaine for the purpose of sale, marijuana and paraphernalia associated with drug-dealing. The defendant Fowler in that case had previously been found guilty of criminal possession of a hypodermic instrument, criminal use of drug paraphernalia, possession of dangerous drugs, prostitution, possession of stolen property and of forged instruments, and petty larceny. More important for present purposes both Carmona and Fowler were allowed to plead guilty to lesser offenses, Carmona to a lesser Class A–II felony carrying a six-year minimum prison sentence and Fowler to a Class A–III felony carrying a minimum prison sentence of one year. Thus Carmona and Fowler would be eligible for parole in six years and one year, respectively.

Here in contrast appellant will not be eligible for parole for at least another eight years and ironically his fellow defendants who were major figures in negotiating the sale of the narcotics involved in the case will be eligible for parole in six years because they were permitted to plead guilty to Class A–II felonies. As a result a person who was not a drug dealer in the ordinary sense of the term, who was not making his living preying upon those who from desperation had become drug addicts, and who is not himself a drug user, has for no apparent logical reason been exposed to a full dose of society's wrath originating in its intractable problem of drug abuse. In my view the punishment inflicted upon him is cruel and unusual within the meaning of the Eighth Amendment.

Since the mandatory sentence prescribed by N.Y. Penal Law §§ 70.00, 220.44 (now § 220.43) and 220.23 (now § 220.21) is in my view unconstitutional as applied to appellant, I would remand the case with directions to release appellant, who has now been in prison for seven years, unless the state court within 60 days resentences him to a term consistent with the limitations of the Eighth Amendment. *Mahler v. Eby*, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549 (1924). Cf. *Boles v. Stevenson*, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); *Townsend v. Sain*, 372 U.S. 293, 316, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Chessman v. Teets*, 354 U.S. 156, 166, 77 S.Ct. 1127, 1 L.Ed.2d 1253 (1957); *United States ex rel. Parson v. Anderson*, 354 F.Supp. 1060, 1091 (D. Del.), *affd.*, 481 F.2d 94 (3d Cir.), *cert. denied*, 414 U.S. 1072, 94 S.Ct. 586, 38 L.Ed.2d 479 (1972).