See also, 138 A.D.2d 519, 526 N.Y.S.2d 127.

**Ernest HICKS, Petitioner,**

v.

**Daniel A. SENKOWSKI, Respondent.**

**No. 89 CV 2156 (SJ).**

United States District Court,
E.D. New York.

Aug. 14, 1992.

The Legal Aid Soc. by Philip Weinstein, Martha Krisel, of counsel, New York City, for petitioner.

Charles J. Hynes, Dist. Atty. of Kings County by Barbara D. Underwood, Leonard Joblove, Janet M. Berk, Asst. Dist. Attys., of counsel), Brooklyn, N.Y., for respondent.

## MEMORANDUM AND ORDER

JOHNSON, District Judge:

Petitioner Ernest Hicks was convicted after a jury trial in New York State Supreme Court, Kings County, of Criminal Possession of a Weapon in the Third Degree.[1] On June 25, 1985, Hicks was sentenced, as a mandatory persistent felony offender, to a prison term of fourteen years to life. The New York Appellate Division, Second Department, unanimously affirmed the conviction on March 14, 1988. On April 11, 1988, the New York Court of Appeals denied petitioner's application for leave to appeal.

Thereafter, petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The sole basis for the instant petition is Hicks' claim that he was denied due process of law when the trial court, as part of the jury charge, instructed the members of the jury in accordance with New York Penal Law § 265.15(3) that they may, but are not required to, infer that defendant possessed a weapon from the fact that he was present in the automobile where such weapon was found.

The New York State courts upheld the constitutionality of the permissive inference as applied to him. *People v. Hicks,*

---

[1] N.Y. Penal Law § 265.02 (McKinney 1987).

[2] The contents of the anonymous call were inadmissible at trial. At a suppression hearing before trial, however, Officer Long testified that the anonymous caller stated that (1) there was going to be a "hit" that same night on an individual named Mackey; and (2) that a gun was going to be in the carburetor of a grey Ford LTD in the area of Albany Avenue and St. John's Street, Mackey's place of business. Long testi-

138 A.D.2d 519, 526 N.Y.S.2d 127 (2d Dep't 1988), *leave to appeal denied,* 71 N.Y.2d 969, 529 N.Y.S.2d 80, 524 N.E.2d 434 (1988). Because petitioner has exhausted his state remedies, this court can address the merits of his claim. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

## BACKGROUND

### 1. *The Trial*

#### A. The People's Case.

The People introduced testimony by the two arresting New York City Police ("NYPD") Officers Daniel Carmosin and Clinton Long. Officer Carmosin testified that upon receiving an anonymous phone call at 6:30 p.m. on June 3, 1984, he and Officer Long drove to St. John's Place and Albany Avenue in Brooklyn in search of a grey Ford LTD that contained a gun in the carburetor.[2] (Trial Transcript (hereinafter "TT") at 155–57). The officers located the car which was parked on the corner of Albany Avenue and Lincoln Place, one block away from St. John's Place. (TT at 155, 168). Upon their initial observation of the car, the police officers saw no passengers in it. (TT at 185).

They observed the car for approximately a half hour until 7:45 p.m., when Ernest Hicks entered the car and drove away. (TT at 168, 169). The officers followed him for several blocks until Hicks stopped at a red light. (TT at 159). Officer Carmosin then approached the car and asked Hicks to exit the car. (TT at 160). Hicks immediately complied with the Officer's request. (TT at 169). Officer Long frisked Hicks and found that he was unarmed. (TT at 169, 170).

fied that he acted on the tip because the contents of the tip made sense in light of his own independent knowledge of a case involving an individual named Mackey. Long was aware that Mackey had been robbed at his business two years earlier, that the robbery trial was scheduled to begin sometime that month, and that Mackey had voiced complaints of recent harassment.

Afterwards, Carmosin opened the hood of the car by reaching under the steering column and propping the hood release. (TT at 169, 170). Thereafter, he removed the air breather located above the carburetor by unscrewing a bolt. (TT at 171). Officer Carmosin testified that this entire procedure only took a matter of seconds. (TT at 182). Inside the carburetor Carmosin found and seized a .38 caliber gun with four live rounds. (TT at 161). Subsequently, the officers placed petitioner under arrest. (TT at 161).

Officers Carmosin testified that, in addition to finding the gun in the carburetor, the officers also found a rental agreement in the glove compartment indicating that the Ford LTD belonged to Hertz, a car rental company, and had been rented to an "Earl Alston [sic]." [3] (TT at 173, 174). The rental agreement indicated that payment had been made with a Visa card in the name of "Earl Alston [sic]." (TT at 180, 181). Carmosin also testified that at the time of defendant's arrest, he possessed a New York State driver's license in the name of "Earl Alston [sic]." (TT at 182).

The testimony of Police Officer Clinton Long was essentially identical to that of Officer Carmosin. Long testified that after receiving a phone call he and Carmosin went to Albany Avenue and St. John's Place to find a grey Ford LTD. (TT at 138). They found a car fitting that description on Lincoln Place and Albany Avenue. (TT at 140). The officers parked their car and kept surveillance over the Ford LTD for about a half hour until defendant entered the car and drove away. (TT at 140, 141). They followed Hicks for two blocks and then asked him to step out of the car. (TT at 141, 142). After Long frisked the defendant, Officer Carmosin looked inside the carburetor and recovered the gun. (TT at 141, 142, 147). Thereafter, Long arrested the defendant. (TT at 142, 146.) Long also testified that the Ford LTD belonged to a car rental company and was rented to an "Earl Alston [sic]." (TT at 145, 146).

The People also presented the testimony of NYPD Detective John Solowski who qualified as an expert in ballistics. Solowski asserted that there was evidence of discharge from the gun found in the car. (TT at 190, 191). He also stated that he did not take tests for fingerprints. (TT at 193, 194). Solowski, however, testified that it was not normal procedure to take fingerprints off of firearms because they have serrated edges that cannot hold fingerprints. (TT at 192, 193).

Finally, the prosecution introduced testimony from Erroll Austen who testified that the driver's license found on petitioner did not have his signature. (TT at 205). Austen also stated that he had never rented the grey Ford LTD from Hertz. (TT at 203, 204). Moreover, he believed that someone had counterfeited his license because he had repeatedly received invoices from rental agencies for cars he had not rented. (TT at 205). Austen reported this matter to the Department of Motor Vehicles in Albany which was conducting an investigation. (TT at 206). Austen also testified that he had never owned a Visa card, the method of payment indicated on said rental agreement with Hertz. (TT at 211). After realizing that there was a pattern of fraudulent rentals using his name, Austen obtained a new driver's license with his picture on it. (TT 207, 212).

## B. The Defense's Case.

The defense's presented one witness— Eric Ellis. Ellis testified that he was with Erroll Austen on June 1, 1984 when Austen bought the gun (TT at 266, 267) and on June 2 when he saw Austen place it in the carburetor after a night of gambling together. (TT at 266, 270, 271). He also testified that he had first met Hicks at Riker's Island where they were housed together while awaiting trial. (TT at 267, 268) He also stated that he had been convicted of assault and robbery in 1976 and pleaded guilty to robbery in 1984. (TT at 261, 262). On cross-examination, he admitted that he had been arrested on robbery

---

**3.** During the proceedings, it was established that this individual's name was Erroll Austen. (TT at 202; Petitioner's Memorandum at 5, n. 3; Respondent's Memorandum at 9, n. 5).

charges in 1982; that charge, however, had been dismissed.[4] (TT at 276).

## 2. The Jury Charge

The trial court described the elements of criminal possession of a weapon in the third degree to the jury.[5] The trial court then addressed the statutory inference over defense counsel's objection:

I charge you that the facts of knowing possession of a firearm by all persons occupying an automobile therein is often the secret operation of a person's mind. Therefore, the law permits, but does not require the jury to presume or infer knowing possession in some circumstances. According to the law, the presence of a firearm in an automobile other than a stolen automobile is presumptive evidence of possession of the firearm by all persons occupying such automobile at the time such firearm was found. This means that after consideration of all the evidence in the case you may presume or infer from the presence of the firearm in the automobile that the firearm was possessed by persons occupying such automobile at the time such firearm was found or you may reject such presumption since it is a rebuttal [sic] presumption. The presumption is permissive and may be disregarded by you. However, the fact that you may infer such possession does not shift to the defendant in any burden of proof whatsoever [sic]. The burden of proof remains on the prosecution throughout the case. Before you can return a verdict of guilty each of you after careful consideration of all the evidence in the case must be satisfied that the prosecution has proven beyond a rea-

sonable doubt that each of the elements of the crime, Criminal Possession of a Weapon in the Third Degree as defined to you earlier, was proven.

During deliberations, the jury requested a read-back of the portion of the charge dealing with the elements of the crime and of the permissive inference instruction. The court read back the relevant portions and shortly thereafter, the jury returned a verdict of guilty on the crime of Criminal Possession of a Weapon in the Third Degree.

## DISCUSSION

Petitioner claims that the inference of possession was unconstitutional as applied to him. Specifically, Hicks contends that merely because he was driving a vehicle did not render it more likely than not that he knowingly possessed a weapon located inside an air filter above the carburetor.

## 1. Historical Use of the Permissive Inference

 In general, the constitutional validity of a permissive criminal inference must meet certain standards. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Giving a permissive inference is proper when there is a rational connection between the basic facts that the prosecution proved and the ultimate fact presumed, and when the latter is more likely than not to flow from the former. *County Court of Ulster County v. Allen*, 442 U.S. 140, 165, 99 S.Ct. 2213, 2228–29, 60 L.Ed.2d 777 (1979) (quoting *Leary*, 395

---

**4.** The name of the complainant in the robbery case was Joseph Mackey.

**5.** "For you to find defendant guilty of this crime, the People are required from all the evidence in the case to prove beyond a reasonable doubt each of the following five elements. 1) That on or about June 3, 1984 in the County of Kings, the defendant possessed a certain object which was introduced into evidence by the People as People's exhibit 1 and as testified to by the People's witnesses. According to the law to possess means to have physical possession or otherwise to exercise dominion or control over

tangible property. Possession of property must be knowing possession. That is, the alleged possessor must be aware of the possession of the property. 2) What the defendant possessed was in fact a firearm ... 3) That the firearm is loaded at the time the defendant knowingly possessed it ... 4) That the defendant knowingly possessed the firearm. According to the law a person knowingly possesses a loaded firearm when he is aware that he possesses a loaded firearm. 5) The defendant's possession of the loaded firearm did not take place in his home or place of business."

U.S. at 36, 89 S.Ct. at 1548).[6] As long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt, it need meet only a "more likely than not" rather than a "beyond a reasonable doubt" standard. *Ulster*, 442 U.S. at 167, 99 S.Ct. at 2230.

In *Ulster*, the United States Supreme Court addressed the constitutionality of the very same statutory inference, New York Penal Law § 265.15(3), herein at issue. Stating that the permissive inference was not unconstitutional on its face, the Supreme Court then held that as applied to the facts of *Ulster*, the permissive inference was not constitutionally infirm.

In *Ulster*, three adult males and a 16–year–old girl were jointly tried on several charges including one for possession of handguns. Police officers had stopped their car for speeding on a New York highway and saw two heavy, large caliber handguns through the window of the car. These guns were protruding from inside an open purse which belonged to the 16–year–old who was sitting in the front seat of the car. One of the adult male passengers was occupying the driver's seat while the other two were sitting in the back of the car. The trial court instructed the jurors that they could infer possession by the three male adults based on their presence in the car.

The Supreme Court held that as applied to the three men, the inference of possession of the guns from their presence in the car where the guns were found was permissible. The Court emphasized that the presence of three adult men with a female teenager, the fact that the teenager's purse was open, the guns easily visible and heavy, and the young girl's possession of a pocket knife in her brasserie seemingly for her own protection all suggested that the men had suddenly attempted to hide the guns when they saw the police approaching the car. In other words, all of the proven facts made it more likely than not that the three men (not just the driver) knowingly possessed the guns and had both the ability and intent to exercise dominion and control over the weapons. 442 U.S. at 163–64, 99 S.Ct. at 2228.

On this basis, the Court held that the permissive inference of possession based on presence in the automobile was proper. The Court stated that the inference was more likely than the notion that the two weapons were the sole property of the 16–year–old girl. The Court also noted that the evidence in the record was compelling, undoubtedly sufficient to establish guilt beyond a reasonable doubt. As such, the Court believed that the permissive inference was almost certainly not the sole basis for the guilty verdict. 442 U.S. at 167, 99 S.Ct. at 2230.

The Second Circuit has adhered to the standards the Supreme Court articulated in *Ulster* for determining the constitutionality of the application of a statutory inference. One Second Circuit case, in particular, sheds some light on the constitutionality of the permissive inference given by the trial court in the instant matter.

In *Bellavia v. Fogg*, 613 F.2d 369 (1979), the Second Circuit upheld the constitutionality of a nearly identical New York statute as applied to the facts of *Bellavia*. The statute at issue in *Bellavia*, New York Penal Law § 220.25(1), makes presence in an automobile of narcotic drugs presumptive evidence of its possession by all persons occupying the automobile.

---

**6.** The Supreme Court adopted this standard from previous cases which had determined the constitutionality of certain permissive inferences on their face. *See Leary*, 395 U.S. at 53, 89 S.Ct. at 1557 (holding that possession of marijuana was insufficient to prove defendant's knowledge that it had been illegally imported); *United States v. Gainey*, 380 U.S. 63, 67–68, 85 S.Ct. 754, 757–758, 13 L.Ed.2d 658 (1965) (upholding a statute that permitted unexplained presence at an illegal still sufficient to support inference that defendant was committing offense of illegally carrying on business of a distiller); *United States v. Romano*, 382 U.S. 136, 141, 86 S.Ct. 279, 282, 15 L.Ed.2d 210 (1965) (holding that the same presence could not support inference of possession or control of the still, as there was too tenuous a connection between the proven fact and the inferred fact, given the narrower scope of the offense and absence of any showing of defendant's function at the still).

An undercover police officer met with defendant Bellavia's two co-defendants in a bar to express approval of a sample of cocaine before concluding a purchase of 31 ounces of cocaine. After the undercover police officer expressed his satisfaction, he and the two co-defendants left the bar, walked a short distance and approached a car in which Bellavia was sitting behind the wheel. Bellavia then got out of the car, searched briefly in the back seat of the car, and removed a rolled-up brown paper bag containing the 31 ounces of cocaine which he gave to one of his co-defendants. Thereafter, all three defendants were arrested for criminal sale of drugs and illegal possession of drugs.

At the trial of all three men, the court charged the members of the jury that evidence of Bellavia's presence in the car containing cocaine allowed them to infer that he had knowing possession of the cocaine, but that they were not required to do so. The prosecution relied solely on the presumption for its case against Bellavia. The jury returned a guilty verdict for Bellavia on the crime of possession of dangerous drugs.

The Second Circuit upheld the constitutionality of the permissive inference as applied to Bellavia on the rationale that "those discovered in an automobile with dealership quantities of controlled substances are more likely than not to have knowing possession of the drugs." 613 F.2d at 372.

2. *Application of the Permissive Inference to Hicks*

█ This court believes that the permissive inference as applied to Hicks presents a close question. A careful review of the record in light of *Ulster* and *Bellavia's* principles, however, leads me to conclude that the trial court's decision to give the instruction was proper. The facts proven at trial made it more likely than not that Hicks knowingly possessed the gun found therein, albeit in the carburetor of the car.

Undoubtedly, the facts indicate that only Hicks had access to the grey Ford LTD. After their half-hour surveillance of the empty car, Officers Carmosin and Long saw only petitioner approach and subsequently utilize the car, obviously indicating that Hicks exercised dominion and control over the car. Moreover, defendant clearly had access to the carburetor since he could flip it open from inside the car as did Officer Carmosin. Officer Carmosin testified that retrieving the gun only took a matter of seconds.

Further, that the police found the gun in a rented car does not preclude application of the permissive inference as petitioner asserts. To the contrary, in this case, the circumstance of the car rental actually supports the inference that Hicks was the person in control of the car and rendered it more likely than not that he knowingly possessed the gun contained therein. The police officer found a counterfeit driver's license in the name of Erroll Austen on petitioner's person at the time of his arrest as well as a rental agreement in the glove compartment between Hertz and Erroll Austen. All of these factors support the conclusion that Hicks rented the car and knowingly possessed the gun secreted therein.

This inference is more likely than the notion that a person who rents an automobile and secretes a loaded firearm in the carburetor is would leave such a weapon when done renting the car. It seems highly improbable that such person would be able to rent the very same car on another occasion and thereby be able to retrieve the weapon. Far more logical is the scenario argued by the People: petitioner rented the car and placed the gun in the carburetor or, was at least aware of its presence there and was in control of the weapon, whether to retrieve it for his own or someone else's purpose.

That Hicks was the sole occupant of the car containing a gun accessible from the inside of it and in possession of both a driver's license and rental agreement with a common name support the inference that Hicks was not merely present in the automobile but had control over it and knowingly possessed the gun hidden therein. *Com-*

*pare Ulster*, 442 U.S. at 165, 99 S.Ct. at 2228–9. Therefore, the charge of possession based on Hick's presence in the car was appropriate under these circumstances.

Finally this court takes notice that the state trial court admonished the members of the jury immediately following the explanation of the permissive inference that they could disregard such inference. Significantly, the court instructed the jury that the inference did not alter the burden of proof in any way and that the burden remained with the People regardless of whether the jury chose to reject or accept the inference. Indeed, when the trial court read back the charges to the jury, he read the portion relating to the inference in context, thereby placing no undue emphasis on it. The trial court thus reminded the jury that the burden of proof always lay with the prosecution.

### CONCLUSION

Having conducted a thorough review of the record, the facts adduced at trial supported the charge of the permissive inference of New York Penal Law § 265.15(3). Accordingly, this court find petitioner's claim to be without merit and denies his request for habeas corpus relief.

The court, however, believes that the instant petition is not frivolous and is deserving of appellate review. Accordingly, the court hereby grants petitioner a certificate of probable cause.

SO ORDERED.