William Eldridge CALDWELL, Jr., Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 80–5103.

United States Court of Appeals, Sixth Circuit.

Cause Argued Dec. 18, 1980.

Decided and Filed June 16, 1981.

William Eldridge Caldwell, Texarkana, Tex., Paul Brickner, court-appointed, Willoughby, Ohio, for petitioner-appellant.

Patrick H. Molloy, U. S. Atty., Barbara B. Edelman, Marilyn S. Daniel, Asst. U. S. Attys., Lexington, Ky., for respondent-appellee.

Before ENGEL, KEITH and MERRITT, Circuit Judges.

KEITH, Circuit Judge.

William E. Caldwell, Jr. was convicted of attempted bank robbery on February 11, 1976. The conviction was upheld by this court in an unpublished order in *United States v. Caldwell*, 549 F.2d 802 (6th Cir. 1976), *cert. denied*, 431 U.S. 919 (1977). Caldwell now petitions for habeas relief under 28 U.S.C. § 2255.[1]

## FACTS

On the morning of May 24, 1974, two armed men wearing ski masks attempted to rob the Community Bank of Erlanger, Kentucky, a federally insured institution. They did enter the bank building, but an alert bank employee activated a "silent alarm" before the would-be robbers could take away any money. The men hurriedly left the scene and on the way out shattered the bank's glass front door with .22 and .32 caliber bullets.

The crime was investigated by the Federal Bureau of Investigation. Within several months it developed a case against Caldwell, and on October 28, 1975, an indictment was returned charging Caldwell and Robert Howard with attempted bank robbery in violation of 18 U.S.C. § 2113(a) and (d).[2]

Caldwell's arraignment was set for December 8, 1975. A Deputy Federal Public Defender was appointed to represent him, and Caldwell entered a plea of not guilty. The federal defender was not present at the arraignment. However, he later sent Caldwell, who was then incarcerated pending trial, an information form to be filled in and returned. Caldwell returned the form, but on January 15, 1976, the federal defender advised him that it had filed a motion to withdraw as his attorney. The federal defender also represented Howard, and it believed that a conflict of interest would likely develop at trial as a result of its representation of both co-defendants.

The trial court granted the federal defender's motion to withdraw on January 15. That same day it appointed Douglas M. Stephens to represent Caldwell. Trial was set for February 9, 1976.

After receiving notice of his appointment, Stephens immediately sought to locate Caldwell. On February 4, he determined that Caldwell was being held in the Fayette County Jail. He telephoned the jail that day, identified himself, and asked to speak

---

1. 28 U.S.C. § 2255 reads in relevant part:

    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

    An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

2. 18 U.S.C. § 2113(a) and (d) read as follows:

    (a) Whoever, by force and violence, or by intimidation, takes or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association; or

    Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, or building, or part thereof, so used, any felony affecting such bank or savings and loan association and in violation of any statute of the United States or any larceny—

    Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

    \*   \*   \*   \*   \*   \*

    (d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

to Caldwell. The jail official who answered the phone, however, reported that Caldwell expressed in strongest terms his disinclination to talk to his court-appointed lawyer.

Stephens prepared for trial in spite of his client's apparent lack of cooperation. He consulted with the federal defender, the federal defender's investigator, the prosecuting attorney, the FBI, Caldwell's probation officer and other law enforcement officials. He then obtained discovery and formulated a tentative defense strategy. That strategy consisted solely of requiring the government to prove its case against Caldwell, a case that Stephens believed was weak.

On February 9, 1976, the day of trial, Caldwell and Stephens met for the first time. They talked for about thirty minutes immediately before the commencement of trial. The conversation took place in the jail lock-up. It was not private, but occurred in the presence of co-defendant Howard and his attorney. At this meeting, Caldwell told Stephens that he was innocent and that his wife's testimony would establish an alibi.[3] Stephens then interviewed Mrs. Caldwell, but she claimed she knew nothing of the events related by her husband. Accordingly, Stephens elected to proceed with the defense as originally planned. Thus at trial he presented no

---

**3.** Mr. Stephens testified that Caldwell told him: "I didn't do it and my wife can say that I didn't, that I was with her ..." App. 96. In the evidentiary hearing below, Caldwell gave the following testimony:

Mr. Rawlings: Would you relate to the court where you were at the time of this attempted bank robbery and what you were doing?
Mr. Caldwell: At approximately that time in the morning I had called a friend of mine and questioned about borrowing a car to take a holiday with my wife over the weekend and I was in the process of acquiring this car at that time in the morning.
Mr. Rawlings: Who was the friend that you are referring to?
Mr. Caldwell: A man known to me as James and has since been referred to me as James Wallace.
Mr. Rawlings: You believe his name to be James Wallace, but then you only knew his name as James?
Mr. Caldwell: Yes, only as James.
Mr. Rawlings: How did you happen to know him?
Mr. Caldwell: Through another mutual friend of ours, Rick Grubb.
Mr. Rawlings: How can you recall this day of May 24, 1974? Is there any reason that that is significant to you or you can figure out what you were doing on that day?
Mr. Caldwell: Yes, sir. It was two days before my first anniversary, and we had made plans to take holiday that weekend. The date in question was a Friday and we had planned to leave on Friday afternoon.
Mr. Rawlings: When you say "we"—
Mr. Caldwell: My wife and I.
Mr. Rawlings: And in relating this incident of borrowing a car, would you explain more fully where that took place and what time it took place, and any other activity that might have happened at that time?
Mr. Caldwell: I had spoken to Mr. Grubb previously to that. He was in possession of

the car and it belonged to a man known to me as James. I had asked him if I could use it because it was a station wagon ... I planned to take a few pieces of camping equipment with me ... and he said that I would have to get it from James. James was not available to ask him about the car at that time. He said "... well, I will talk to him later," and I called Mr. Grubb early that morning on the 24th to inquire as to if he had spoken to James about borrowing the car and he said "... yeah, he said you could pick it up any time you want to." And, then, I left my home over on Holman Street and went over to Garrard Street, it is a distance of about six or eight blocks, and acquired the keys and the car from James Wallace.
Mr. Rawlings: What time of day or night did this take place?
Mr. Caldwell: It was approximately around 8:00, 8:15.
Mr. Rawlings: Is that a.m. or p.m.?
Mr. Caldwell: a.m.
Mr. Rawlings: And what time did you finish this activity of borrowing the car and going to its location and that sort of thing?
Mr. Caldwell: I believe it was around 8:30 in the morning when I left the parking lot in back of Mr. Wallace's apartment.
Mr. Rawlings: And then where did you go from there?
Mr. Caldwell: From there I proceeded to Newport, Kentucky to acquire pieces of camping equipment that I would be using for the weekend.
Mr. Rawlings: Okay. In May or June of 1974, were you aware that somebody had tried to rob this bank?
Mr. Caldwell: No, sir.
However, as the government points out in its brief, Caldwell never mentioned James Wallace, Mr. Grubbs or a camping trip to his court-appointed attorney. Moreover, his wife knew nothing of the events related above.

proof in Caldwell's behalf, and sought only to raise a reasonable doubt about Caldwell's guilt through cross-examination of the government witnesses.

The government's case rested largely on the testimony of Eric Henslee, Robert Howard's brother-in-law. At trial, he testified that Caldwell and Howard visited his home on the day of the robbery. At that time, Howard had a deep cut on his hip. He told Henslee that he received the cut when he and Caldwell shot the glass out of the bank's front door. Henslee also testified that Caldwell brought two gym bags into the house, each of which contained a ski mask and a pistol. According to Henslee, the three of them then discussed having the pistols cleaned and reblued. They also discussed having the serial numbers removed.

On February 11, the jury returned a guilty verdict. The next day Caldwell was sentenced to 25 years in prison.

### I

The first issue presented for review is whether the petitioner's Sixth Amendment right to effective assistance of counsel was denied either before or during the trial. Caldwell alleges the following as constituting ineffective assistance of counsel: (1) the failure of his attorney to meet with him at an earlier time; (2) the failure of his attorney to meet with him in private; and (3) the failure of his attorney to interview four potential alibi witnesses. The petitioner also asserts that his attorney should have moved for a continuance so that there would have been time to explore the feasibility of structuring an alibi defense. For the reasons discussed below, we find these arguments without merit.

The Sixth Amendment guarantees that a criminal defendant shall enjoy the right "to have the Assistance of Counsel for his defence". Almost 50 years ago in *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932) the Supreme Court found

this clause to mean that under the Constitution defendants are entitled to an attorney's "effective and substantial" assistance. Judge Celebrezze set out the Sixth Circuit standard for applying this rule in *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974). There he opined that "the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render, and rendering reasonably effective assistance." The court held that: "[D]efense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations." However, if "action that appears erroneous from hindsight was taken for reasons that would appear sound to a competent criminal attorney, the assistance of counsel has not been constitutionally defective." *Id.* at 696. *See also Isble v. United States*, 611 F.2d 173 (6th Cir. 1979); *United States v. Renfro*, 600 F.2d 55 (6th Cir.), *cert. denied*, 444 U.S. 941, 100 S.Ct. 294, 62 L.Ed.2d 307 (1979); *Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978); *Wilson v. Cowan*, 578 F.2d 166 (6th Cir. 1978).

Applying this standard to the facts before us, we hold that the actions of Caldwell's attorney did not deprive petitioner of his right to effective assistance of counsel. The district court made an evidentiary finding below that Stephens made conscientious efforts to confer with Caldwell. That finding is entitled to considerable weight, and we find it to be well-supported by the evidence. Upon a review of the record, we see little more that petitioner's counsel could have done to defend him. Petitioner's counsel sought to contact Caldwell. He only gave up these efforts when Caldwell refused to meet with him. He then put forth the best defense he thought that he could, based on the facts available to him. Under these circumstances, we cannot hold that Caldwell did not receive effective assistance of counsel.[4]

---

**4.** The Second Circuit has held that infrequency of visitation by a defense counsel with a defendant is insufficient, by itself, to establish

ineffective assistance of counsel. *See Brinkley v. LeFevre*, 621 F.2d 45 (2d Cir. 1980); *United States ex rel. Testamark v. Vincent*, 496 F.2d

*Beasley* teaches that defense counsel "must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." 491 F.2d at .696. In our view, petitioner's attorney fulfilled this obligation. He only rejected the alibi defense after an interview with the petitioner's wife demonstrated that the defense was not maintainable. Caldwell does assert that there were three other potential alibi witnesses but the district court found as a matter of fact that putting on these witnesses would have been, in effect, "encouraging perjury". This finding is well supported.

Caldwell's contention that had his attorney met with him earlier there would have been time to interview other potential alibi witnesses is equally without merit. Upon a review of the record, we think that an attorney with "ordinary training and skill in the criminal law" would have rejected the potential alibi defense here once Mrs. Caldwell disputed the petitioner's explana-

tion. Therefore, the petitioner's Sixth Amendment right to counsel claim must fail.

## II

Caldwell also contends that his due process rights were violated below. He asserts that his attorney's failure to meet with him before the day of trial, the failure of the trial court to advise Caldwell's court-appointed attorney of "the geographical problem" in defending the petitioner,[5] and the United States District Court for the Eastern District of Kentucky's prohibition of plea bargaining[6] all constitute separate violations of due process protections. In addition, Caldwell maintains that the trial court unlawfully advanced the date of the trial from March 1, 1976, or some later date, to February 9, 1976. Petitioner maintains that this left his attorney with only six full weekdays to prepare for trial, and that under *United States v. Blount*, 479 F.2d 650,

641, 643 (2d Cir. 1974) *cert. denied*, 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975). But the Second Circuit does not subscribe to the *Beasley* formulation of ineffective assistance of counsel and does not invoke Sixth Amendment protection unless a trial "shocks the conscience" or constitutes a "farce and a mockery of justice." *See Brinkley, supra* at 47 (Weinstein, J. dissenting), *Indiviglio v. United States*, 612 F.2d 624 (2d Cir. 1979); *Bellavia v. Fogg*, 613 F.2d 369 (2d Cir. 1979). For a critique of this standard *see e. g.* Kadish and Paulsen, Criminal Law and its Process, 806–816 (3d ed. 1975), *id.* 178–201 (1979 Supp.), Kamisar, Lafavre and Israel, Modern Criminal Procedure 60–61 (4th ed. 1975), *id.* 16–18 (1979 Supp.) *Note*, Identifying and Remedying Ineffective Assistance of Criminal Defense Counsel: A New Look After *United States v. DeCoster*, 93 Harv.L.Rev. 752 (1980). Accordingly, this court declines to set out as a general rule that infrequency of visitation is never enough to demonstrate ineffective assistance of counsel. There may be circumstances where infrequency of visitation prevents an attorney from rendering "reasonably effective assistance" and in those circumstances Sixth Amendment protections should attach.

5. Petitioner argues that the trial court appointed Mr. Stephens as defense counsel without advising him of the "geographic problem" of defending the petitioner, *i. e.*, the fact that petitioner was in custody in Nashville, Tennessee at the state penitentiary and at the Tennes-

see Work Release Center, while appointed counsel practiced in Covington, Kentucky—approximately 290 miles from Nashville. Petitioner also points out that he was tried in Cattletsburg, Kentucky—about 140 miles from Covington—and that he was held on an interim basis at Fayette County Jail, which is about 80 miles from Covington.

But counsel for petitioner never explains how the geographic distance between the petitioner and his counsel either impaired the quality of representation below or resulted in an unfair trial. Thus, it is difficult to see how any due process considerations were implicated.

6. In his brief, counsel for petitioner avers that an assistant U. S. Attorney advised him by telephone that court policy in the Eastern District of Kentucky prohibits plea bargaining for a reduction in a charge but permits dismissal of some counts on multi-count indictments. However, counsel for petitioner points to no local rule, case or other official writing which establishes the existence of such a practice. Nevertheless, even if such a policy exists in the Eastern District of Kentucky, it is doubtful that a local rule regulating the practice of plea bargaining would constitute a *per se* violation of due process rights, *Cf. Weatherford v. Bursey*, 429 U.S. 545, 561, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("there is no constitutional right to plea bargain").

652 (6th Cir. 1973) this constituted a violation of his due process rights.

A review of the record indicates that none of the foregoing due process claims was presented to the district court. Since they were not presented below, they are not properly before this court, and cannot be addressed on appeal. *See Matlock v. United States*, 391 F.2d 238 (6th Cir. 1968); *Eisner v. United States*, 351 F.2d 55, 58 (6th Cir. 1965); *Bush v. United States*, 347 F.2d 231 (6th Cir. 1965). *See also Mustain v. Pearson*, 592 F.2d 1018, 1020 (8th Cir. 1979); *King v. United States*, 565 F.2d 356, 358 (5th Cir. 1978); *Smith v. United States*, 413 F.2d 975 (10th Cir.), *cert. denied*, 396 U.S. 932, 90 S.Ct. 273, 24 L.Ed.2d 231 (1969). Accordingly, this court cannot consider the merits of Petitioner Caldwell's due process allegations.

Therefore, the judgment of Judge Hermansdorfer, United States District Court for the Eastern District of Kentucky, is affirmed.