**Luis CHAVEZ, Petitioner,**

v.

**Reginald PULLEY, Respondent.**

**Civ. No. S–83–691 MLS.**

United States District Court,
E.D. California.

June 25, 1985.
Amended Dec. 10, 1985.*

---

* Amended to update cites and style; content the same.

Luis Chavez, pro se.

William G. Prahl, Deputy Atty. Gen., Sacramento, Cal., for respondent.

## AMENDED ORDER

MILTON L. SCHWARTZ, District Judge.

Petitioner, a state prisoner proceeding *pro se*, has filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, petitioner alleges that the trial court denied him due process of law when it ordered him removed from the courtroom during trial, that the trial court improperly denied his request for substitution of counsel, and that he was denied the effective assistance of trial counsel.

After reviewing the papers and lodged records of the state court, this court has determined that the application must be denied.

## FACTS

The following summary of facts is taken from the unpublished opinion of the California Court of Appeal and from this court's own independent review of the evidence as presented at petitioner's trial and of the entire trial court record.

At about 1:37 a.m. on November 3, 1980, a man entered a convenience market and pointed a sawed-off shotgun at the night clerk, Mark Ortega. The robber was wearing a "green khaki-colored" [sic] jacket and pants and a white T-shirt, and had a mustache. Ortega was alone in the small store, working at the end opposite the door where the robber walked in. When the robber said "get the money," Ortega walked to the cash register and put most of the register's contents into a paper bag. While he did so, he periodically looked up and glanced at the robber. Ortega was then told to lie on the floor, did as he was told and heard the footsteps of the robber leaving the store and crossing a gravel area outside it. The entire incident lasted between 30 and 40 seconds. Portions of the robbery were captured on video tape by an automatic camera focused on the area of the cash register.

After the robber left the store, Ortega phoned the police and described the crime and the robber. He estimated to police that about eighty dollars had been taken, including approximately ten dollars in quarters, five dollars in dimes and over twenty-five one-dollar bills. Two city police officers were in a patrol car when they received a radio dispatch at about 1:38 a.m. concerning the robbery. They responded by driving to an area within four blocks of the convenience store, where they saw a man walking on the sidewalk about 100 feet from their car who matched the broadcast description of the robber. As the patrol car approached, the man changed direction and hid behind the fence of a near-

by house. The officers then saw the man running along the fence, and as they pursued him, he jumped the fence.

At that point additional police units were called. A police dog led them to petitioner, who was found crouched in the bushes near the front porch area of the same house. Petitioner was wearing a green shirt, with a white T-shirt underneath it, and green pants; the green clothing was described by one of the officers as being "similar to Army fatigue." Police recovered fourteen one-dollar bills and $16.75 in change, mostly quarters and dimes, from petitioner. Crumpled currency totaling $45 was also found lying on the ground near where petitioner was taken into custody. The total recovered from the area, including petitioner's person, was $75.75.

Shortly after 2:00 a.m. store clerk Ortega was taken by police to the scene where petitioner was captured. While seated in the patrol car, Ortega identified petitioner, who was in custody, as the robber. Several officers searched for a weapon at the time of petitioner's arrest and again later that morning. The search covered the area of petitioner's flight and capture, as well as several possible routes from that scene to the convenience store. No weapon was ever found.

Petitioner was charged with robbery and the use of a firearm in the commission thereof. During two pretrial hearings petitioner orally requested that the court appoint new counsel and discharge his current attorney, and he later filed a declaration in support of that request. On the day before trial, the court held a hearing on petitioner's request for substitution of new counsel and denied the same.

On the second day of petitioner's jury trial, after the prosecution had rested, petitioner's removal from the courtroom was ordered by the judge when he persistently interrupted the judge despite the latter's warnings concerning his behavior. After a brief recess during which counsel spoke with petitioner, the court ruled that the trial should continue in petitioner's absence. Petitioner's counsel, who had planned to call him as a witness at that point, did not put on a case. After closing arguments, the jury, after deliberating for approximately an hour and twenty minutes, found petitioner guilty of committing robbery with the use of a firearm. He was later sentenced to state prison for a term of eight years, the sentence having been enhanced by petitioner's admission of a prior felony conviction.

Petitioner appealed this conviction to the California Court of Appeal, asserting, among other grounds, the denial of his motion for appointment of new counsel and his removal from the courtroom. The Court of Appeal affirmed the judgment of conviction on November 19, 1981. Petitioner did not file either a petition for rehearing in the Court of Appeal or a petition for hearing in the California Supreme Court. However, subsequently petitioner did file petitions for writs of habeas corpus in the California Superior Court, Court of Appeal and Supreme Court. His petition to the Supreme Court alleged the same grounds as those raised in the application before this court. The Supreme Court denied the petition on July 28, 1982, and petitioner then filed the present application.

## PROCEDURAL DEFAULT

The California Supreme Court's order denying petitioner's application for a writ of habeas corpus cites two cases, *In Re Waltreus*, 62 Cal.2d 218, 225, 42 Cal.Rptr. 9, 397 P.2d 1001 (1965), and *People v. Pope*, 23 Cal.3d 412, 425, 152 Cal.Rptr. 732, 590 P.2d 859 (1979). Respondent argues that the citation of *In Re Waltreus* constitutes a rejection of two of petitioner's claims on procedural grounds, and not on the merits of those claims, and that therefore petitioner is barred, based on the doctrine of procedural default, from raising those claims in federal court.

 Failure to comply with state procedural rules may bar consideration of a claim in federal court absent a showing of "cause" for the failure and actual "prejudice" resulting from the alleged constitu-

tional violation. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Maxwell v. Sumner,* 673 F.2d 1031, 1033 (9th Cir.1982), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). "For reasons of comity and respect for the function of procedural rules in our judicial system, courts view the failure to present a federal claim in accordance with certain procedural rules to be an independent and adequate ground for a state court judgment." *Maxwell,* 673 F.2d 1034, *citing County Court v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). This doctrine is designed to ensure that state courts have a genuine opportunity to reach the merits of petitioner's federal contentions before they can be presented to the federal court. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). However, if the federal court determines that no procedural rule exists, or if the state court does not apply its own procedural rule and decides a claim on the merits, comity is not offended by the federal court's subsequent hearing of the same claim. *See Maxwell,* 673 F.2d 1031; *County Court v. Allen,* 442 U.S. at 154, 99 S.Ct. at 2223. Accordingly, this court must first determine whether petitioner failed to comply with a state procedural rule and if so, whether the California Supreme Court relied on such a rule in rejecting petitioner's claims.

■ In *Waltreus,* on the page cited by the California Supreme Court in its order, the Court found that petitioner Waltreus' "arguments were rejected on appeal and habeas corpus ordinarily cannot serve as a second appeal." *In Re Waltreus,* 62 Cal.2d at 225, 42 Cal.Rptr. 9, 397 P.2d 1001. Respondent argues that *Waltreus* announces a procedural rule, which bars the use of state habeas corpus to raise claims that could have been brought on direct appeal and were not, or that have already been brought on appeal and rejected. While respondent is correct in this assertion, he is

not correct in the contention that this state procedural rule results in a bar of federal habeas review of the issue(s) in question.

This very contention was rejected by the Ninth Circuit in *Maxwell,* 673 F.2d 1031. The court there held that a citation to *Waltreus* by the California Supreme Court, in denying state habeas relief, is an indication that the claim or claims raised have been considered and rejected *on their merits* by the California Court of Appeal, and the claim(s) will therefore not be considered again in a habeas petition to the California Supreme Court. The Ninth Circuit further held that because the California Court of Appeal reached the merits of the claim(s), no procedural default exists in such a situation. *Maxwell,* 673 F.2d 1035.

Accordingly, this court finds in the present case that there is no adequate or independent state ground, i.e. a procedural ground, for denying any of petitioner's claims and that they may be considered on their merits.

### REMOVAL FROM COURTROOM

On the second day of trial, outside the presence of the jury, defense counsel orally moved for a continuance of one to two weeks in order to permit petitioner to contact favorable witnesses. As counsel completed his presentation, petitioner started to interject. The court cut him short, stating that since his earlier motion for substitute counsel had been denied, petitioner was required to address the court through counsel. When the court finished that statement, petitioner began to describe a particular incident which he felt showed the existence of conflict between himself and counsel. The court then attempted several times to warn petitioner concerning his conduct, but was consistently interrupted in its attempts to do so or to succeed in stopping petitioner from talking. Finally, the following occurred:[1]

THE COURT: Will you listen to me, Mr. Chavez? Under 1043 of the Penal

---

1. All of the dialogue quoted in this and subsequent sections of this order is taken from the reporter's transcript of petitioner's trial.

Code I am now putting you on notice. Any further outbursts and you are leaving this courtroom. Now, I've had it with your.

DEFENDANT CHAVEZ: Yeah. Well, I want—

THE COURT: I discussed that motion and I have ruled on it, and I am not getting into it again; and you are not to address this Court again except through your attorney. Now, that's it.

DEFENDANT CHAVEZ: Well, you are just going to have to hold me in contempt, Your Honor, because I object to all this. I object to all this.

THE COURT: Fine. Take him out of here, put him in the holding tank.

MR. BIGELOW: Your Honor, I would respectfully object to that.

DEFENDANT CHAVEZ: You know what, I have rights, and, you know, you are not going to let me speak for myself.

THE COURT: Sir,—

DEFENDANT CHAVEZ: I am not a lawyer. I cannot defend myself.

THE COURT: Take him to the holding tank. When you can behave yourself, you can come back.[2]

With petitioner absent, the court stated that it had "had to shout over him" and that he was "an obstructionist." Defense counsel stated his objection to the removal, and pointed out the serious problem which petitioner's absence posed for him: the prosecution having rested, petitioner was to be the next and only defense witness. The court then formally denied counsel's earlier motion for a continuance and informed counsel that he would have five minutes in which to speak with petitioner. "If he wants to behave, he comes back in. If he doesn't want to behave himself, we"re going forward with it ..."

After a brief recess, counsel reported back and the court responded:

MR. BIGELOW: Your Honor, I can represent to the Court, only in my conversation he said that he would not keep his mouth shut, that he said, "You would have to gag me."

I think he was referring to me, but I leave that to the Court's interpretation.

MR. PERKINSON: Your Honor, I would only have a point of clarification for the record.

It appears that he is voluntarily absenting himself from further proceedings at this point, is that the understanding?

THE COURT: Well, it's—I will take a look at this, because as far as I'm concerned, we're going to go forward with this.

Let's see, under 1043 here. Under 1043 he was warned, he was given the opportunity through counsel to come back.

He doesn't want to come back, so I can't turn my court over to a disruptive defendant; and beyond that, we could take the position that he is, in effect, voluntarily absent through 1043, subsection (b) subsubsection 2.

But in either event, it doesn't make any difference to me. If he wants to play the game that way, God gave him a free will.

Bring in the jury. We are going forward with it.

The jury was then brought in and informed of petitioner's absence. The court cautioned that there were "legal reasons why" petitioner was not present, and that his absence should not be given any bearing in their deliberations. The court reminded them of its earlier admonition concerning the prosecution's burden of proof. The prosecution having rested the previous

**2.** California Penal Code section 1043(a) requires the personal presence at trial of a defendant in a felony case. Section 1043(b)(1) provides that a trial may continue in a defendant's absence through a verdict if, after the defendant has been warned that he will be removed if his disruptive behavior continues, he then conducts himself "in a manner so disorderly, disruptive and disrespectful of the court that the trial cannot be carried on with him in the courtroom." The quoted statutory language repeats verbatim the standard of *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). Penal Code section 1043(b)(2) provides that a trial may continue where a defendant's absence is voluntary.

day, the court asked defense counsel if he had "anything to offer." Counsel replied that he did not "at this time," and that the defense had rested "in light of the Court's earlier ruling." Closing arguments were then presented.

Petitioner asserts that the removal violated both his right to be present and his right or privilege to testify in his own behalf. The removal does touch upon both constitutional issues.

■ A defendant in a criminal trial has the right to be present in the courtroom at every stage of his trial, a right guaranteed by the confrontation clause of the sixth amendment to the Constitution, and made obligatory on the state by the fourteenth amendment. *Allen*, 397 U.S. at 338, 90 S.Ct. at 1058. However, the right to presence is not absolute. *Id.* In *Allen*, the Supreme Court explicitly held

> that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

397 U.S. at 343, 90 S.Ct. at 1060.

The defendant in *Allen* continued to talk after he had been replaced by appointed counsel, threatened to make a corpse of the judge, threw the papers from his file on the floor, declared that he would prevent any trial whatsoever, and responded to questions with vile and abusive language. The Supreme Court sustained the trial court's decision to remove Allen, holding that under the circumstances he had lost his right to be present at trial. *Allen*, 397 U.S. at 346, 90 S.Ct. at 1062. The Court noted that "[p]rior to his removal he was repeatedly warned by the trial judge that he would be removed from the courtroom if he persisted in his unruly conduct, ..." and that he "was constantly informed that he could

return to the trial when he would agree to conduct himself in an orderly manner." *Id.* See also *Badger v. Cardwell*, 587 F.2d 968 (9th Cir.1978) (series of disruptions including clenched fist gesture and taunting of trial judge held to justify expulsion and denial of right to presence); *United States v. Kizer*, 569 F.2d 504 (9th Cir.), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978) (single incident of disruption during prosecution closing argument held to justify exclusion for rest of case).

The United States Supreme Court has not expressly held that a defendant in a criminal trial has a constitutional right to testify in his own behalf. However, the court seems to favor constitutional recognition of a defendant's right to testify. In *Harris v. New York*, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971), the Court stated that "[e]very criminal defendant is privileged to testify in his own defense, or to refuse to do so."; *see Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972); *Faretta v. California*, 422 U.S. 806, 834 n. 45, 95 S.Ct. 2525, 2540 n. 45, 45 L.Ed.2d 562 (1975). *But see United States v. Grayson*, 438 U.S. 41, 54–55, 98 S.Ct. 2610, 2617–18, 57 L.Ed.2d 582 (1978) (Court avoids express recognition of a constitutional basis, noting that the right to testify was "guaranteed by law," but not necessarily the Constitution).

Several federal circuit courts have expressly held that there is a constitutional right to testify in a criminal trial. *Alicea v. Gagnon*, 675 F.2d 913, 923 (7th Cir.1982); *U.S. ex rel Wilcox v. Johnson*, 555 F.2d 115, 119 (3rd Cir.1977); *United States v. McCord*, 420 F.2d 255, 257 (D.C.Cir.1969); *United States v. Bentvena*, 319 F.2d 916, 943 (2d Cir.), *cert. denied*, 375 U.S. 940, 84 S.Ct. 345, 11 L.Ed.2d 271 (1963).[3]

The Ninth Circuit, however, has not clearly decided the question. In *Yates v. United States*, 227 F.2d 844 (9th Cir.1955),

---

**3.** The Eighth Circuit has also so held, but certiorari was granted in *Whiteside v. Scurr*, 744 F.2d 1323, 1329–30 (8th Cir.1984), *cert. granted sub* nom., *Nix v. Whiteside*, —— U.S. ——, 105 S.Ct. 2016, 85 L.Ed.2d 298 (1985).

*aff'd in part, rev'd in part*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957), the court, in different portions of its opinion, characterized the opportunity to testify as both a right and a privilege. In *Fowle v. United States*, 410 F.2d 48, 53 (9th Cir.1969), the court stated that the right to testify is "a basic constitutional safeguard." More recently, in *United States v. Panza*, 612 F.2d 432, 438 (9th Cir.1979), *cert. denied*, 447 U.S. 925, 100 S.Ct. 3019, 65 L.Ed.2d 1118 (1980), the court again did not resolve the issue, noting that a defendant's right to testify "has become a basic feature of our law."

In *United States v. Ives*, 504 F.2d 935 (9th Cir.1974), *vacated on other grounds*, 421 U.S. 944, 95 S.Ct. 1671, 44 L.Ed.2d 97 (1975), *opinion reinstated in part*, 547 F.2d 1100 (1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1130, 51 L.Ed.2d 554 (1977), the court acknowledged the possible constitutional dimension of the right, but did not decide the issue, choosing instead to characterize the presentation of such testimony as a privilege. *Ives*, 504 F.2d at 939. The *Ives* court, relying expressly on *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, held that the privilege to testify can be waived by a defendant's conduct. The court warned that the privilege could not be lost unless "it is clearly necessary to assure the orderly conduct of the trial." *Ives*, 504 F.2d at 941–42. The court stated that the trial judge,

> in his discretion, must decide whether the seriousness of the disruption is sufficient to constitute a waiver of the privilege. We also hold, as did the Court in *Illinois v. Allen*, that the defendant must be warned of the consequences of his actions before a court can determine that he has waived his privilege to testify.

*Ives, id.* at 942. The court added that because the trial judge has discretion in supervising the conduct of proceedings in his courtroom, and because facial expressions, gestures and other nonverbal conduct cannot be preserved for the record by transcription, great deference must be given to the course chosen by the trial judge to deal with a disruptive defendant. However, given the importance of the testimonial privilege, the judge should approach the "weighty decision" whether to bar the defendant from testifying "with great circumspection." *Ives*, 504 F.2d at 942. The court elaborated on the factors to be considered:

> [The trial judge] should distinguish between occasional incidents which cause only slight disruption and those calculated to thwart the entire proceedings. Although occasional disruptions may be annoying to the judge and he may feel that they would prejudice the defendant in the eyes of the jury, the judge should consider, among other things, the gravity of the disruptions, the likelihood of continued disruptions and the possibility of violence if the defendant takes the stand. In considering the probability of continued disruption and violence, the judge should not be unmindful of misconduct of the defendant in prior court appearances.

*Id.*

Applying this legal test to the facts of the case before it, the *Ives* court held that the trial court had not committed error in refusing to allow defendant Ives to testify. The court cited numerous incidents at trial in which Ives had been disorderly, disrespectful or disruptive. These incidents included physical attacks on his own counsel (twice) and the U.S. Attorney, uttering an obscenity directed at his counsel in the jury's presence, shouting from his cell beneath the courtroom, and repeatedly interrupting and arguing with the trial judge.

■ In the present case, the court concludes, based on the criteria enunciated in *Allen* and *Ives*, that the trial court did not commit error in initially removing petitioner from the courtroom. The court first considers the gravity of the disruption, and is conscious of the *Ives* court's caution that the trial judge should "distinguish between occasional incidents which cause only slight disruptions and those calculated to thwart the entire proceedings." *Ives*, 504 F.2d 942. The trial court in this case seems to

have viewed petitioner's behavior as being in the latter category: "He's an obstructionist." However, only a single incident led to the removal. It is true that during that incident, petitioner may have raised his voice and did repeatedly interrupt the judge, who "had to shout over him." Although the *Ives* court acknowledged that "occasional disruptions may be annoying to the judge and he may feel that they may prejudice the defendant in the eyes of the jury ...," in the present case, the jury was not present when the incident occurred. Moreover, when contrasted with the level of disruption which occurred in *Ives* and *Allen,* the disruption in the present case does not seem especially serious or grave. Nonetheless, it may have appeared at the moment that petitioner's removal was the only possible response to what had occurred.

Second, it is apparent that there was little probability of violence if the petitioner took the stand. In weighing this factor, the court looks to petitioner's conduct in prior court appearances. Petitioner had not exhibited and did not threaten violence during prior court appearances.

Third, the court considers whether there was a likelihood of continued disruption and in addressing this question it must consider petitioner's conduct during prior court appearances. *Ives,* 504 F.2d at 942. An examination of the record here does not reveal any other instances in which petitioner was disruptive. On the contrary, in none of his prior direct exchanges with the trial judge did he interrupt or use disrespectful language. Nor is there any indication in the record that he did anything else, by way of facial expression, gestures or tone of voice, to disrupt any prior proceeding. However, the immediate conduct that occasioned petitioner's removal may have sounded like a challenge to the court. When the court warned petitioner about further outbursts, he replied: "You are

just going to have to hold me in contempt, Your Honor, because I object to all this." [4]

Therefore, recognizing the trial judge's opportunity for first-hand observation of the circumstances, this court has concluded that the trial court did not err in choosing to remove petitioner from the courtroom. The court's inquiry does not end here, however. It must also consider whether the trial court committed constitutional error when it decided to proceed in petitioner's absence, without providing him with a sufficient opportunity to reclaim the right to be present and the privilege to testify.

## FAILURE TO PROVIDE OPPORTUNITY TO RECLAIM RIGHT OF PRESENCE AND PRIVILEGE TO TESTIFY

In *Illinois v. Allen, supra,* the trial court had personally offered defendant, while he was in the courtroom, several opportunities to remain if he would promise good behavior. In concluding that the trial court had acted properly in barring defendant from being present, the Supreme Court held: "Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings." *Allen,* 397 U.S. at 343, 90 S.Ct. at 1061.

■ In *United States v. Ives, supra,* the defendant disrupted the proceedings and was removed several times during the course of trial. He was allowed to return to the courtroom several times, and during three of these instances was specifically offered the opportunity by the trial judge to testify in his own behalf. In its extensive review of the facts of the case, the *Ives* court cited with approval the language of *Allen* requiring that the defendant have the opportunity to reclaim. 504 F.2d at 944 n. 19. Therefore, this court holds that a trial judge who has removed a criminal defendant from the courtroom because of

**4.** Similarly, petitioner is reported to have told his attorney from the holding cell during the recess that "you would have to gag me." However, the remark was not before the court when

it initially decided to remove petitioner, but was only considered instead in determining whether to proceed without him.

his disruptive behavior must offer the defendant the opportunity to reclaim the right of presence and the privilege to testify.

In the present case, the trial court's offer to defendant personally was insufficient. Apparently speaking to the bailiff and then to petitioner as he was being removed, the judge said: "Take him to the holding tank. When you can behave yourself you can come back." Counsel was then permitted five minutes during a recess to speak with petitioner in a holding cell. Counsel reported back to the court that petitioner had said, "you would have to gag me," in response to whatever counsel had said.[5]

The absence of a transcribed record of what was said between counsel and petitioner during the recess makes it difficult for this court to determine whether or not petitioner was offered the constitutionally required opportunity to reclaim his right of presence and the privilege to testify. The precise meaning of petitioner's remarks as reported to the court, and whether they may fairly be treated as a waiver of his right of presence and privilege to testify, are subject to considerable doubt. It should be recalled that petitioner was not satisfied with counsel's representation and that the two of them had had arguments which apparently included shouting and cursing, during pretrial meetings at the jail. Moreover, even if this court accepts as true counsel's representation on the record of the content of what petitioner said, the more critical area of inquiry is *what counsel said to petitioner.* Counsel was directed to convey the "message" stated by the court, but the record is, unhappily, devoid of what counsel actually said to petitioner.[6]

In the absence of such a record, this court must conclude that petitioner was not provided with the constitutionally required opportunity to reclaim his right to presence and privilege to testify, and that the trial court, although initially justified in removing petitioner, committed constitutional error when it decided to go forward with the trial in petitioner's absence. Weighing heavily in this decision is the fact that petitioner's exclusion and the court's subsequent failure to provide the opportunity to reclaim, occurred at the very point in the trial where petitioner was about to be called as the sole witness in his own behalf, and that the trial court was specifically advised of this by defense counsel immediately after the exclusion occurred.

## HARMLESS ERROR

Having concluded that the trial court committed constitutional error in precluding petitioner from testifying in his own behalf, the court must now determine whether or not that error was harmless.

The Supreme Court has held that certain constitutional rights are so basic to a fair trial that their violation can never be treated as harmless error. *Chapman v. California*, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967). However, neither the right to be present at a criminal trial nor the privilege to testify in one's own behalf has been held to be among the rights whose violation requires reversal per se.

5. In an affidavit filed with this court, petitioner alleges that counsel's version of his discussion with petitioner at the holding cell is inaccurate. Because this court finds that the trial court's error was harmless, it need not make further inquiry into the truthfulness of these allegations.

6. The trial court might have employed one of two methods to make its record of the constitutionally required offer to petitioner. It could have brought petitioner back into the courtroom and made its offer to petitioner personally, as occurred in both *Ives* and *Allen*. Alternatively, it could have ensured that a record was made of the conversation between counsel and petitioner, or had the offer to return conveyed by a bailiff with the proceedings at the holding cell being transcribed by a court reporter. This method was utilized in *Foster v. Wainwright*, 686 F.2d 1382 (11th Cir.1982), *cert. denied*, 459 U.S. 1213, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1983). In either event this court agrees with the assessment of the California Court of Appeal, that "the [trial] court might have allowed counsel more than five minutes to speak with the defendant." *People v. Chavez*, unpubl. opn. in 3 Crim. No. 11305, at p. 8 (November 19, 1981).

Short of requiring reversal per se are those "constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction." *Chapman*, 386 U.S. at 22, 87 S.Ct. at 827. The *Chapman* court "announced a very exacting test that must be satisfied before a constitutional error must be regarded as harmless. The burden is on the prosecution to establish the harmlessness of the error and reversal is required unless the court is 'able to declare a belief that it was harmless beyond a reasonable doubt.'" 3A C. Wright, *Federal Practice & Procedure*, § 855, *quoting*, *Chapman*, 386 U.S. at 24, 87 S.Ct. at 828. The Supreme Court has recently restated the *Chapman* test for harmless constitutional error. "The question a reviewing court must ask is this: absent the ... [error], is it clear beyond a reasonable doubt that the jury would have returned a verdict of guilty." *U.S. v. Hasting*, 461 U.S. 499, 510–11, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96 (1983).

The difficulty with this formulation of the harmless error standard is that it is designed to be applied in cases where the trial court error is one of commission in improperly permitting certain evidence or argument to be considered by the jury. However, the constitutional error in the present case led to the *absence* of certain information from the jury's deliberation, namely, the testimony of petitioner. Moreover, it would be impracticable for this court to approach the harmless error assessment by adding testimony by petitioner back into the case, and determining on that basis whether it could be said beyond a reasonable doubt that a verdict of guilty would have been returned. Petitioner has not alleged nor did counsel place on the record the sum or substance of what his testimony would have been. In addition, even if such an allegation or such a record had been made, it would be extremely difficult for this court to now weigh the effect on the jury that petitioner's presence on the stand would have had, apart from the substance of his testimony. It has been suggested that for precisely these reasons the harmless error rule should not be applied to cases involving the denial of a defendant's constitutional right to testify. *Wright v. Estelle*, 572 F.2d 1071, 1074 (5th Cir.) (Godbold, J., dissenting opinion), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 617, 58 L.Ed.2d 680 (1978). However, neither the Supreme Court nor the Ninth Circuit has held that such a rule of per se reversal is to be applied.

■ For present purposes, therefore, this court believes the test to be applied is: even if the jury gave no consideration or weight whatsoever in their deliberations to the fact that petitioner was absent from a portion of his trial and did not testify in his defense, is it clear beyond a reasonable doubt from the evidence which was presented that the jury would have returned a verdict of guilty? *See U.S. v. Hasting*, 461 U.S. at 510–511, 103 S.Ct. at 1981. After an independent review of the record, this court has concluded that the trial court's error, although of constitutional magnitude, was harmless beyond a reasonable doubt.

Petitioner was sighted by police minutes after the crime and a few blocks away from the crime scene. When first spotted, he matched the victim's description of the robber and the clothing worn by the robber. He attempted to evade capture. After his capture, wearing the same clothes as those attributed to the robber by the victim's description, police found in his possession currency and coins of the same type and in the same amounts as those taken in the robbery. He was positively identified at the scene within an hour of the robbery by the victim as the robber. The victim later identified him in court. The crime was memorialized on video tape; the tape was played and photographs taken from the tape were shown in court, where the victim identified petitioner as the person on the tape and in the photos. The strongest circumstance before the jury which might have have operated in petitioner's favor was the fact that no weapon was

ever found despite a thorough police search.

It is clear to this court that the jury would have returned a guilty verdict, even if the error of precluding petitioner's return to the courtroom and testifying had not been committed. The evidence of guilt was, as characterized by the California Court of Appeal, "overwhelming." The trial court's error in precluding petitioner from being present and testifying in his own behalf was therefore harmless, and petitioner cannot prevail on this claim. *See Chapman,* 386 U.S. at 18, 87 S.Ct. at 824.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■■■■ In responding to petitioner's argument on the issue of adequacy of trial counsel, the court notes that the Supreme Court has recently enunciated the standards for evaluating claims of ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland,* 104 S.Ct. at 2064. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.* at 2066. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* Second, a defendant must affirmatively prove prejudice. *Id.* at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2069. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id. See also United States v.*

*Murray,* 751 F.2d 1528, 1535 (9th Cir.1985); *United States v. Schaflander,* 743 F.2d 714, 717–18 (9th Cir.1984) (per curiam), *cert. denied,* —— U.S. ——, 105 S.Ct. 1772, 84 L.Ed.2d 832 (1985). In addition, "[t]here is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in all significant decisions made. *Strickland,* 104 S.Ct. at 2066." *Butcher v. Marquez,* 758 F.2d 373, 376 (9th Cir.1985).

■■■ In the present case, petitioner alleges that his counsel would not communicate with him, did not provide him with an adequate investigation, and that counsel conceded to the jury that he was guilty.[7] Respondent argues that the California Supreme Court's rejection of petitioner's claim of incompetency of counsel was a "determination of the merits and that the 28 U.S.C. section 2254(d) presumption of correctness must be applied." (*See* Respondent's Answer at p. 12). However, the Supreme Court in *Strickland* made it clear that a state court conclusion that counsel rendered effective assistance is *not* a finding of fact binding on the federal court to the extent stated by section 2254(d). *Strickland,* 104 S.Ct. at 2070. Rather, the conclusion is a mixed question of law and fact "which the federal court reviews *de novo. Strickland,* 104 S.Ct. at 2070 ..." *Butcher v. Marquez,* at 376 (citations omitted).

Respondent also asserts (in a footnote) that the allegation that counsel conceded guilt was not a part of petitioner's claim in the state court, and that consideration of it by this court is foreclosed under *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1970). That case requires a habeas petitioner to present the *same* constitutional claim to the federal court as was asserted in the state court, in order to exhaust state court remedies.

---

**7.** Although petitioner makes the latter allegation in support of his claim that there was irreconcilable conflict with counsel, the reported cases have analyzed alleged concessions of guilt by counsel in terms of whether the defendant was thereby deprived of the effective assistance of counsel. *See, e.g., United States v. Bradford,* 528 F.2d 899 (9th Cir.1975), *cert. denied,* 425 U.S. 914, 96 S.Ct. 1512, 47 L.Ed.2d 764 (1976); *Wiley v. Sowders,* 647 F.2d 642 (6th Cir.), *cert. denied,* 454 U S 1091, 102 S.Ct. 656, 70 L.Ed.2d 630 (1981). This court will do likewise.

■ The exhaustion of available state remedies is a prerequisite to a federal court's consideration of claims sought to be presented in habeas corpus proceedings. *See Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Carothers v. Rhay,* 594 F.2d 225 (9th Cir.1979); 28 U.S.C. § 2254(b). The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations. *See Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1970).

The court has carefully examined petitioner's petition for a writ of habeas corpus filed in the California Supreme Court, and has been unable to determine whether this particular allegation in support of his claim here has been exhausted. The allegations of his state petition are occasionally confusing and are presented in a disorganized fashion, combining to some extent his claim of conflict with counsel with his claim of ineffective assistance of counsel. Counsel's remark concerning petitioner's guilt was a part of the trial court record which would have been before the state court. This court will therefore assume, *arguendo,* that this allegation in support of petitioner's claim of conflict with counsel has been exhausted.

■ Applying the *Strickland* standard to the facts of this case, the court has determined that petitioner's claim of ineffective assistance of counsel must fail. First, petitioner alleges that his counsel would not communicate with him; however, brevity of consultation time between a defendant and his counsel alone cannot support a claim of ineffective assistance of counsel. *See Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984) (per curiam). This is especially the case where, as here, the petitioner fails to allege what purpose further consultation with his attorney would have served and fails to demonstrate how further consultation with his attorney would have produced a different result. *Strickland,* 104 S.Ct. at 2068. Moreover, where the claim is that counsel failed to communi-

cate with a defendant, it must appear only that counsel spent sufficient time to ensure an adequate defense and to become thoroughly familiar with the case. *Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980). It affirmatively appears from the present record that counsel satisfied both requirements here. Counsel had reviewed the police reports, talked to the public defender who had represented petitioner at a preliminary hearing, reviewed the transcript of that hearing and viewed photographs in the district attorney's file. Counsel had met with petitioner briefly several times before trial, although it is unclear whether these meetings were productive in trial preparation. Counsel announced to the trial court, at the time of petitioner's motion for substitution, that he was prepared to go to trial. In addition, after the trial court denied petitioner's motion, petitioner and counsel did confer "at length" at the jail on the evening before trial began.

Furthermore, petitioner cannot complain of counsel's failure to communicate where his own refusal to see counsel is the cause of a lack of communication. *Caldwell v. United States,* 651 F.2d 429, 432 (6th Cir.), *cert. denied,* 454 U.S. 904, 102 S.Ct. 412, 70 L.Ed.2d 222 (1981); *United States v. Blue Thunder,* 604 F.2d 550, 554–55 (8th Cir.), *cert. denied,* 444 U.S. 902, 100 S.Ct. 215, 62 L.Ed.2d 139 (1979). The record reveals that on at least one occasion petitioner refused to meet with counsel when counsel went to the jail to talk with him. Petitioner conceded that this occurred on one occasion; his counsel also represented to the trial court, based on his file notes, that it had occurred on two other occasions.

■ Petitioner also alleges that counsel did not provide an adequate investigation. However, he makes no specific allegation of what such an investigation might have produced or how its omission, if such was the case, prejudiced his defense. Petitioner's failure to furnish such specifics is a sufficient basis for rejecting this part of his claim. *Harshaw v. United States,* 542 F.2d 455 (8th Cir.1976). The court notes that petitioner's motion for substitution of

new trial counsel was based, in part, on counsel's alleged failure to have an investigator contact certain witnesses on his behalf. Even if the court were to construe this as the basis of petitioner's claim of a lack of investigation, the record indicates that petitioner, as of the morning before trial, had not yet revealed to counsel the names of either of the two alleged witnesses. When the trial did begin, petitioner had revealed to counsel only the name of one witness and had not given counsel any information on how to contact this witness, preferring to contact the witness himself. Petitioner cannot be heard to complain of a lack of an investigation when he himself has thwarted counsel's efforts. *Caldwell,* 651 F.2d 429; *Blue Thunder,* 604 F.2d 550.

Third, petitioner alleges that his counsel "agreed with the prosecution during the trial and in front of the jury that petitioner was guilty." While counsel may have come close to conceding guilt, he stopped short of actually doing so. He stated that "the District Attorney has, has proved that, perhaps, Mr. Chavez is guilty, possibly he is, but I submit to you that that is not proof beyond a reasonable doubt and to a moral certainty." The words "Mr. Chavez is guilty," were immediately preceded and followed by qualifiers, and counsel emphasized that the district attorney had not sustained his burden of proof. Certainly, counsel's statement was a questionable tactic, especially in light of the fact that his client was absent from the courtroom at the time and that counsel had not been able to present any case for the defense. The remark may have served to highlight these problems for the jury. However, the statement came only at the end of an otherwise credible closing argument which had been consistent with counsel's apparent strategy in the case, which was to call attention to the few gaps and unanswered questions in the prosecution case. Moreover, counsel had prepared for the case, and had actively participated in the trial on petitioner's behalf. He cross-examined prosecution witnesses and interposed objections during direct examination and the introduction of exhibits. He twice

requested a continuance to attempt to locate potential witnesses and made an immediate objection to petitioner's removal from the court. Counsel's conduct of the case was inconsistent with a concession of guilt.

In *Wiley v. Sowders,* 647 F.2d 642, counsel made several unequivocal admissions of guilt during closing arguments in a jury trial for burglary. The Sixth Circuit held that the defendant had been deprived of the effective assistance of counsel by counsel's admission of guilt without the prior consent of the defendant. "Although statements made by attorneys in closing arguments are not evidence, nevertheless, for all practical purposes, counsel's admission of guilt on behalf of his client denied to petitioner his constitutional right to have his guilt or innocence decided by the jury." *Id.,* 647 F.2d at 650.

In *United States v. Bradford, supra,* defense counsel conceded during closing argument in a jury trial for robbery that the evidence was overwhelming and that defendant was in fact the robber. Counsel then argued that his client had lacked willfulness and the intent to commit the crime. The Ninth Circuit held that defendant had not been deprived of the effective assistance of counsel by the concession. The court agreed that the evidence against defendant was very strong. Counsel was able and experienced, the court reasoned, and "did the best he could with a virtually impossible case. At worst counsel's actions were only tactical decisions which in retrospect might have been wrong." *Bradford,* 528 F.2d at 900.

In contrast with *Wiley* and *Bradford,* counsel here stopped short of conceding guilt, arguing that "perhaps" or possibly" petitioner was guilty, but that the prosecution had not met its burden of proving that fact beyond a reasonable doubt. However, the court believes that the Ninth Circuit's remarks concerning Bradford's counsel— that "he did the best he could with a virtually impossible case" and that counsel's action "in retrospect might have been wrong"—are appropriately applied to the

present case. The court has therefore concluded that petitioner was not denied the effective assistance of counsel by the making of the remark.

## REQUEST FOR APPOINTMENT OF NEW COUNSEL

■ In his third claim, petitioner alleges that the trial court committed constitutional error when it denied his request for appointment of new counsel. It is well settled that when a defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir.1982), *cert. denied*, 461 U.S. 916, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983); *see also Wilson v. Mintzes*, 761 F.2d 275 (6th Cir.1985); *McKee v. Harris*, 649 F.2d 927, 933 (2d Cir.1981), *cert. denied*, 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982); *United States v. Hart*, 557 F.2d 162, 163 (8th Cir.), *cert. denied*, 434 U.S. 906, 98 S.Ct. 305, 54 L.Ed.2d 193 (1977). The trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust and concern. *Hudson*, 686 F.2d at 829.

In the present case, the trial court did hold a hearing on petitioner's request, pursuant to *People v. Marsden*, 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (1970),[8] following which it denied the request. In evaluating a trial court's denial of a request or motion for new counsel, this court considers a number of factors, "including the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint and whether the conflict was so great that it resulted in a total lack of communication preventing an adequate defense." *Hudson*, 686 F.2d at 829.

In considering the timeliness of petitioner's motion, the court finds that it was made in a timely fashion. Petitioner twice attempted to raise his dissatisfaction with

his attorney by oral motion during pretrial appearances. On the first occasion he was told that his request to be represented by the same attorney that had represented him at a preliminary hearing was not within the trial court's power. On the second occasion he was told to write the trial court a letter explaining his problem. On the same day as that appearance, he wrote and filed a "declaration of conflict of interest between attorney and client," which contained his request for substitution of counsel. However, his request was not considered until nearly a month later, on the day before trial began. This late consideration is not attributable to petitioner, who had made the request in a timely fashion.

It is difficult for this court to discern on the present record whether the trial court's inquiry was sufficient to "ease the [petitioner's] dissatisfaction, distrust and concern." *Hudson*, 686 F.2d at 829. On the one hand, the trial court did listen to what petitioner had to say. He stated his complaint, counsel was asked to and did respond, and petitioner made a further statement. Apart from asking a brief question of petitioner and warning him not to disclose the names of witnesses, the trial judge did not interrupt petitioner or cut him short. In addition, part of petitioner's concern seems to have been what appeared to him a lack of preparation and readiness for trial on the part of counsel. Counsel's statement regarding his actual preparation and readiness for trial should have served to ease that concern, and the trial judge pointed that out in his denial of petitioner's request for substitution. Moreover, the trial judge also noted that as a result of putting over the start of trial until the following morning, petitioner would have a further opportunity to confer with his attorney. On the other hand, the trial court did not address specific questions to petitioner or counsel designed to elicit more information about the facts of the abortive meetings or the depth of any antagonism

---

**8.** *People v. Marsden* requires the trial court to hold a hearing when a criminal defendant requests substitution of counsel. The California

rule articulated in *Marsden* substantially parallels the one prescribed in the Ninth Circuit in *Hudson v. Rushen*, cited in the text.

between them. However, on the present record this court is unable to conclude that the trial court's inquiry was inadequate.

■ Therefore, the court must determine whether the conflict between petitioner and his counsel was so great that it resulted in a total lack of communication which prevented an adequate defense. In making this determination, several facts stand out. First, the court is disturbed by petitioner's allegations in his declaration and at the hearing that counsel had cursed, yelled, laughed at and spoken sarcastically to him. Although it is not entirely clear, such conduct appears to have occurred on several occasions. In counsel's response at the hearing he did not deny these allegations, which clearly evidences a conflict between defendant and counsel. *See United States v. Williams*, 594 F.2d 1258 (9th Cir. 1979). Second, one of petitioner's principal disagreements with counsel seems to have concerned counsel's alleged failure to contact witnesses in petitioner's behalf. However, counsel stated that he had first heard about any "additional" witnesses on that very morning.[9] Petitioner did not dispute this statement. If it was true, petitioner's apparent reluctance to reveal the names of witnesses to counsel may have stemmed from his distrust of counsel. On the other hand, a failure by petitioner to reveal to counsel the names of favorable witnesses and the content of their testimony would also be consistent with another fact which the court finds significant. That is, petitioner was alleged by counsel to have told another public defender early in the case that he intended not to be communicative with subsequent defense counsel. Petitioner did not deny making this statement. Fourth, notwithstanding petitioner's allegations that counsel had not prepared his case for trial, counsel stated unequivocally that he had reviewed "all of the information available" in the case and that he was prepared to go to trial. Such conflict as did exist in the case appears not to have

prevented counsel from preparing a defense.

The conflict between petitioner and counsel was not so serious that petitioner was deprived either of "any counsel," *see Hudson*, 686 F.2d at 832, or of an adequate defense. For that reason, it was not error for the trial court to deny petitioner's request for substitution of counsel.

For the reasons stated above, IT IS ORDERED that petitioner's application for a writ of habeas corpus is denied.

---

9. Counsel seems to have been referring to any witnesses other than the store clerk who was robbed and who apparently was alone in the store at the time.